IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

| | |
|---|---|
| GREGORY C. KAPORDELIS, | ) |
| Petitioner-Appellant, | ) |
| | ) |
| | ) APPEAL NO. 12-13456-E |
| UNITED STATES OF AMERICA, | ) |
| Respondent-Appellee. | ) |

*COURT OF APPEALS RECEIVED FEB 06 2013 ATLANTA, GA U.S. CLERK*

---

MOTION FOR RECONSIDERATION OF COA DENIAL
BY A THREE-JUDGE PANEL

Now comes Gregory C. Kapordelis, Appellant, seeking reconsideration
of Circuit Judge Wilson's single-judge order denying a Certificate of
Appealability with respect to thirteen questions presented, and denying
as moot leave to proceed in forma pauperis.  A three-judge panel should
be assigned the task of reconsideration, pursuant to FRAP 27(d).  See
also Hodges v. A.G., 506 F.3d 1337, 1339 (11th Cir. 2007)(Had Hodges
moved for reconsideration of the single-judge denial of COA as to Grounds
IV and IV, "his motion would have gone before a three-judge panel.")

In order to persuade the panel that Judge Wilson's denial of COA
was clearly unjust based on the facts and legal arguments supporting
Appellant's thirteen questions, this brief will focus on the most cri-
tical issue -- the Fifth and Sixth Amendment violations resulting from
the false jury instruction as to the age of legal consent for sexual
activity (see Questions 2 and 9(B) on pages 14-44 and 131-142 of the
COA petition) -- and only briefly outline the other questions which
are equally deserving of COA approval.  More to the point, Appellant con-
tends that the instant panel will readily recognize that § 2255 relief
is due regarding the false instruction claim, and he asks the panel to
deem this showing sufficient cause to warrant reconsideration of all

1

questions in his COA petition, and to grant a COA where there is a valid claim of the denial of a constitutional right and (if relevant to the claim) a showing that the district court was wrong in its procedural ruling.

I. **Judge Wilson Erred When He Deemed Moot Appellant's Informa Pauperis Status, Where The Appeal Of The Recusal Motion Did Not Require a COA.**

On Appellant's application for in forma pauperis status, he referenced not only the claims underlying the COA petition, but also his claim related to Judge Pannell's and Judge Brill's denial of a motion to recuse. Appellant contends that he should have been granted the right to appeal the recusal issue as a pauper even if the COA had been denied as to all questions presented. Indeed, Appellant properly objected below to the district court's denial as to recusal, making the issue ripe for appeal once the district court's final order as to the § 2255 motion was executed.

Wherefore, Appellant requests that the instant panel grant in forma pauperis status irrespective of whether a COA is granted.

II. **Judge Wilson Erred When Concluding That Appellant Failed To Show That Reasonable Jurists Would Find It Debatable Whether (1) The District Court Was Correct In Its Procedural Ruling, And (2) The Petition States A Valid Claim Of The Denial Of A Constitutional Right. A Detailed Analysis Of Question #2 explains why.**

In each of the questions presented in the COA petition, Appellant provided irrefutable proof of a constitutional violation, and, where necessary, he provided additional proof to overcome the district court's assertion of a procedural bar (whether coined as "prior litigation" or a "procedural default"). Judge Wilson failed to recognize this proof.

Appellant presents infra the brief he intended to file if granted a COA as to Question #2, a brief which demonstrates not merely that there is a "debatable" argument regarding a constitutional violation and the

2

district court's procedural ruling, but that the facts and law demand that § 2255 relief be provided instanter.

Appellant fully understands that the Supreme Court "do[es] not require a petitioner to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus," Miller-El v. Cockrell, 537 U.S. 322 (2003), but he can think of no better way to prove Judge Wilson's error in denying a COA than by demonstrating that his claim is undeniably meritorious. In short, evidence of a constitutional violation and an erroneous procedural ruling at the district court certainly makes these issues debatable in the minds of reasonable jurists.

TABLE OF CONTENTS AS TO QUESTION #2
                                                                        Page

A. Overview.....................................................4

B. Relevant Facts...............................................6

C. Legal Argument ...........................................11-40

    1. Appellant's Fifth and Sixth Amendment Rights Were Violed

        (a) Fifth Amendment Violations.

            (i)   Inability To Present A Defense.............12
            (ii)  Corruption Of Jury's Truth Seeking duty....13
            (iii) Presumption Of Innocence Was Eviscerated...15
            (iv)  Summary As To Due Process Violations.......16

        (b) Sixth Amendment Violations

            (i)   Denial Of An Impartial Jury................17
            (ii)  Denial Or Right To Confront Evidence.......19

        (c) These Violations Amounted to Structural Error ...21-22

    2. District Court's Assertion Of Prior Litigation Is Unsupported

    3. Procedural Default Negated By Substantive Appellate-IAC Claim

        (a) Prejudice Under Strickland is Transparent........31
        (b) Deficient Performance Is Clearly Manifest........33
        (c) Prejudice Should Be Presumed.....................35
        (d) Summary As To IAC Claim..........................37

    4. Procedural Default Is Overcome Under Wainwright v. Sykes

**Question #02:** Whether the district court erred in denying, for pro-
cedural reasons, Mr. Kapordelis's Fifth and Sixth Amendment claims
in Ground-5 concerning the fatal effect of the false jury instruction
on the 404(b) evidence pertaining to his legal, homosexual sexual con-
duct in Prague, where the false instruction resulted in the fabrication
of bogus evidence of child molestation which improperly established
intent as to the charged crimes and which poisoned juror impartiality?
This claim is specifically linked to Mr. Kapordelis's claim of ineffec-
tive assistance of counsel under Ground-16, where Mr. Samuel is being
faulted based on his deficient performance at trial and on appeal.

## A. Overview

As detailed in Appellant's habeas petition under Ground-5 (Doc. 536,
Att. 6, pp. 1-29), Memorandum of Law (Doc. 546, pp. 107-119), and Mo-
tion for COA (COA Pet., pp. 14-52), this claim involves the trial court's
decisions (i) to present jurors, most of whom identified themselves as
biased against homosexual conduct, with graphic and detailed evidence
of Appellant's legal, homosexual sexual activities in Prague, Czech Re-
public, three years prior to arrest; (ii) to instruct the jury fal-
sely that the age of legal consent for sexual activity was 18, when it
was 16 in the state of Georgia and thirty-three other states, and 15 in
the Czech Republic; and (iii) to reject a cautionary instruction which
would have included the age of consent laws. Appellant's Fifth and
Sixth Amendment rights were violated, as a result of the false instruc-
tion's effect on the 404(b) evidence, because his legal sexual conduct
involving persons under 18, but over the age of legal consent, was
transmogrified into evidence of heinous molestation crimes. Exhibit-53
alone forced the jurors to conclude that Appellant violated the law
more than a dozen times, even though no crimes actually took place.

Appellant contends that the Fifth and Sixth Amendment trespasses
manifest as (i) the denial of rudimentary demands of fair procedure
through a defect which involved a corruption of the jury's "truth-seeking"
function, (ii) the denial of a presumption of innocence, (iii) the
denial of an ability to confront evidence, (iv) the fabrication of evi-

4

dence of intent (mens rea), i.e., an element of the crime; (v) the denial of a right to an impartial jury; (vi) exploitation of the false evidence at closing; and (vii) structural error.

The district court escaped review of Ground-5 on the merits, by erecting a procedural bar after concluding it was "an expanded version of the arguments made in [Appellant's] direct appeal brief, [and] should therefore be denied." (Doc. 567, p. 12). When it came time to address Appellant's claim of ineffective assistance of counsel, the district court never once acknowledged (much less addressed) the merits of Ground-5, even though this ground was provided as support for the IAC claims underlying Ground-16. (Doc. 567, pp. 23-26; Doc. 536, Att. 17, p.   ). As such, no deference is due the district court's decision as to whether a constitutional violation took place, where the Eleventh Circuit clearly requires a review of the underlying claims in ineffective assistance of counsel claims. Cross v. United States, 893 F.2d 1290 (11th Cir. 1990)(In order to determine whether the failure to raise a claim on appeal resulted in prejudice, the merits of the omitted claim must be reviewed.).

In addition to justifying habeas review based on IAC, Appellant seeks review based on the "cause and prejudice" standard addressed in Wainwright v. Sykes, 433 U.S. 72, 81-88 (1972), by asserting that "cause" is established not only based on IAC, but based on the denial of a meaningful appellate review due to the adoption of a false premise that Appellant was the one who opened the door to the Prague evidence. But for the false premise, the appellate panel (on direct appeal) would have authorized a new trial based on a legitimate harmless-error review under Fed.R.Crim.P. 52(a). Indeed, longstanding Supreme Court and Eleventh Circuit precedent would have allowed no alternative resolution.

## B. Relevant Facts

This is a summary of the facts which were detailed in Appellant's petition for COA (Doc. 588, pp. 15-24). The district court has never challenged the veracity of any of these facts, choosing instead to summarily conclude that no constitutional violations took place. Indeed, even where the government chose to falsely assert (in its responsive pleading, Doc. 553, p.20) that the jury instruction was accurate based on U.S. law, the district court remained silent, and for good reason: it is irrefutable that the jury instruction was false based on both U.S. and Czech law.

Because the district court has implicitly conceded to Appellant's factual allegations, the appellate court's task is simple: to determine whether the facts constitute a constitutional violation worthy of habeas relief. As the facts infra reveal, only a new trial can provide relief.

1. Appellant engaged in legal, private, homosexual sexual conduct in Prague, Czech Republic, three-years prior to arrest (i.e. between 1998 and 2001), which was unrelated to child pornography (Doc. 536, Att. 6, p. 2; Att. 13, p. 1). This sexual activity made up the 404(b) evidence which was presented at trial as both testimony and exhibits. Specifically, there was evidence that Appellant engaged in non-commercial sex with persons under the age of 18 but over the age of legal consent, and there was evidence that Appellant engaged in sexual activity with an 18 year old prostitute. Czech law permitted sexual conduct with any person over the age of 15, as well as prostitution with a person over the age of 18. U.S. federal law inacted in 2003 permits non-commercial sexual conduct with persons over the age of 16, and commercial sex with persons over the age of 18. See 18 U.S.C. § 2423(c). The majority of states in America permit non-commercial sexual conduct with persons over the age of 16. See U.S. v. Lopez-DeLeon, 513 F.3d 472, n.3 (5th

6

Cir. 2008)(identifying statues in all fifty states as to age of consent).

2. Although the testimonial evidence at trial was purely specu-
lative, in terms of whether sexual conduct took place and the actual
ages of persons involved with Appellant, the exhibits (particularly
Exhibit 53, but generally Exhibits 46-61) included graphic details of
Appellant's conduct (i.e., anal sex versus oral sex, etc.) and expressly
identified the ages of Appellant's partners.  To appreciate the more
toxic effect of the exhibits (when compared to the testimony), please
see Doc. 536, Att. 6, pp. 16-22.  Importantly, Exhibit 53 alone pro-
vided evidence of more than a dozen sexual encounters (out of more than
fifty) which involved persons over the age of legal consent but under
the age of 18.  It was this evidence of legal conduct which was morphed
into evidence of criminal conduct based on the false jury instruction.

3. Prosecutors conceded during the sentencing hearing that the
sexual conduct in Prague did not constitute criminal events, and the
court expressly stated that it didn't know whether the events were legal
or not based on the record. (Sent.Tr., p. 241-42).

4. The government filed a motion in limine prior to trial seeking to
admit the Prague 404(b) evidence, notwithstanding the admission by
jurors to a bias against homosexual sexual conduct.  Mr. Samuel objected
to the government's motion, but the court granted it (at least with re-
gard to exhibits) prior to opening statements. (Docs. 209, 224, 410, 418).

5. The government also filed a motion in limine (Doc. 406) urging
the court to reject the defense request that jurors be informed about
the age of consent laws that governed Appellant's activities in Prague.
Based on two statements in the government's motion (Doc. 406, n-1 and
n-2), it is clear that prosecutors intended to deceive jurors into in-
ferring that the sexual activity in Prague involved "conduct with minors,"
i.e., something that could not be inferred if the age of consent laws

7

were provided. Mr. Samuel strenuously objected to this motion, but the court granted it before formulating its cautionary instruction to jurors. (Doc. 536, Att. 6, pp. 2-3). Specifically, the court denied Mr. Samuel's request that jurors be instructed on the age of consent laws, and it presented a cautionary instruction advising jurors they could consider the Prague conduct to determine whether Appellant had the necessary intent to "disobey or disregard the law." (Doc. 588. p. 17-19). Movant contends that the cautionary instruction was poisonous sans the age of consent laws, because jurors were invited to infer the existence of criminal intent by finding that the Prague conduct was unlawful.

6. The trial court presented a false instruction (Government In-struction #17) which forced jurors to conclude it was a crime if Appel-lant had engaged in sexual activity with any person in Prague who was under the age of 18. The court did this by first defining the term minor, for purposes of the instructions, as "any person under the age of 18 years," and by then advising that "Under the law, a minor may not consent to participating in sexual activity." (Tr.Tr., pp. 2054, 2057). As a result, the jury was compelled to conclude that Appellant fully intended to disobey or disregard the law each time he had sexual encoun-ters with people under the age of 18, even though the conduct was legal because his sexual partners were over the age of consent. Appel-lant contends that this false evidence of heinous molestation crimes not only generated a false source of intent, but also eviscerated his right to an impartial jury and his right to a presumption of innocence.

7. Although Mr. Samuel objected to jury instruction #17, and to the court's rejection of a cautionary instruction which included the age of consent laws, he did not complain of structural error which violated Appellant's right to a fair trial under the Sixth Amendment. As the

8

trial excerpts presented in the Petition for COA reflect (Doc. 588, p. 18), Mr. Samuel insisted that jurors be told the truth: "What's wrong with telling [jurors] the truth about that?" The government's response, i.e., that it was not making "any allegations [as to the legality of the sexual activity in Prague] one way or the other," is exposed as nothing short of a false promise when one reflects on the false jury instruction (supra) and the false statement during closing argument (see infra). Simply put, the prosecutors' agenda was corrupt.

8. During closing argument, prosecutors capitalized on the false evidence of sexual molestations in Prague (thus betraying their promise not to argue "one way or the other") when telling jurors that, "Dr. Kapordelis was free to have sex with someone over the age of 18 as much as he wanted, male or female....What he does with his free time that is legal isn't before you. It is not anything we are passing judgment on." (Doc. 536, Att. 6, p. 5; Doc. 588, pp. 20-21; Tr.Tr., p. 2031). Put simply, prosecutors wanted jurors to conclude that the sexual conduct in Prague was unlawful because it involved persons under the age of 18. This was untrue, and prosecutors knew it was untrue. Even today, a person can engage in sexual activity with a 16 or 17-year old in Prague, without violating Czech or U.S. law, as long as images of the sexual acts are not produced. Such conduct is also lawful in thirty-three states in America, including Appellant's homestate of Georgia. The government's misconduct during closing argument furthered the due process violation emerging from the false instruction.

9. Rather than enumerate a claim on appeal which alleged multiple Fifth and Sixth Amendment violations resulting from the effect of the false jury instruction (and failure to caution) on the 404(b) evidence (specifically Exhibits 46-61), Mr. Samuel presented a far weaker claim alleging that the 404(b) evidence was irrelevant and, therefore, should

not have been introduced (App.Br., at 4). Mr. Samuel also failed to claim that the constitutional harm amounted to a structural error which required the presumption of prejudice, and failed to request a plain-error review under Fed.R.Crim.P. 52(b) to the extent that he failed as trial counsel to object on this basis.

10. Mr. Samuel was far more focused in his reply brief, i.e., when responding to the government's false claim of "invited harmless error" and branding the instructional error as a "404(b) slaughter." In short, Mr. Samuel provided specific references to the trial transcript to prove that it was the government that first introduced the Prague evidence to jurors, and that Appellant merely responded during his opening statement to what had already been admitted. (App.R.Br., pp. 23-29; Doc. 536, Att. 6, p. 27; Doc. 588, p. 22). He also proved harm_fulness_.

11. On direct appeal, the panel seemingly failed to assimilate Mr. Samuel's reply brief, because it (i) escaped a legitimate harmless-error analysis under Rule 52(a), by adopting the government's false premise of 'invited error'; (ii) never addressed the effect of the false jury instruction on the trial exhibits that Mr. Samuel identified only in his reply; (iii) summarily dismissed the "failure to caution" claim as one "in passing"; and, (iv) refused to "point a finger" at the district court based on the false premise of invited error. (See Doc. 588, pp. 21-24, for relevant excerpts from the direct appeal briefs and June 1, 2009 decision; Kapordelis, 569 F.3d at 1312-14).

12. Ground-5 cannot be deemed an effort to re-litigate issues that were presented on direct appeal, because the appellate panel never addressed the effect of the false jury instruction on the 404(b) exhibits which were waived on direct appeal. As such, Appellant must only overcome/negate the assertion of a procedural default for habeas review.

10

## C. Legal Argument

As detailed in Appellant's application for COA (Doc. 588, pp. 14-52; adopted in full by reference), his Fifth and Sixth Amendment rights were violated in multiple ways due to the effect of a false jury instruction on the 404(b) evidence pertaining to legal, homosexual, sexual conduct which took place in Prague three years prior to arrest. To prove that relief is merited beyond question, Appellant will (1) establish the fact of constitutional harm, (2) expose as clear error the district court's assertion of "prior litigation," and (3) show that habeas relief is required whether based on the substantive claim of ineffective assistance of counsel under Strickland v. Washington, or based on the existence of "cause and prejudice" under Wainwright v. Sykes.

### 1. Appellant's Fifth And Sixth Amendment Rights Were Violated

#### (a) Fifth Amendment Violation:

The Fifth Amendment guarantees due process of law. This necessarily involves "more than fair process." Washington v. Glucksberg, 521 U.S. 702, 719 (1977). The Due Process Clause "includes a substantive component that 'provides heightened protection against government interference with certain fundamental rights and liberty interests.'" Troxel v. Granelle, 147 L.Ed.2d 48 (2000)(quoting Glucksberg, 521 U.S., at 720). The Supreme Court has regularly observed that:

> [T]he Clause specifically protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition...and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed. Glucksberg, 521 U.S., at 721-722)(citations and internal quotations omitted).

Appellant argues that the false jury instruction, coupled to the trial court's refusal to caution jurors as to the age of legal consent for sexual activity, deprived Appellant of his fundamental rights by (i)

11

denying Appellant the right to present a defense by proving the Prague
conduct was lawful and, therefore, not evidence of heinous criminal acti-
vities or evidence of intent to "do what the law forbids," (ii) corrup-
ting jurors' "truth seeking function," (iii) undermining any semblance
of a presumption of innocence, and (iv) capitalizing during closing ar-
gument on the false evidence spawned by the false instruction's effect
on the 404(b) evidence.  As explained in §§(b), infra, the Fifth Amend-
ment transgressions were antithetical to the notion of a fair trial, but
the Sixth Amendment harm was even worse.

### (i) Appellant Was Unable To Present A Defense

When assessing the fatal effect of the jury instructions on the
404(b) evidence, particularly the false evidence of more than a dozen
criminal molestations spawned by Exh. 53 (i.e., legal conduct but for
the false instruction), longstanding Eleventh Circuit precedent rebukes
any outcome where a defendant is unable to present a valid defense.  In
United States v. Edwards, 968 F.2d 1148, 1153 (11th Cir. 1992), that
panel held that it is reversible error to refuse a charge on a defense
theory for which there is an evidentiary foundation.  To be sure, there
was no honest rationale in Appellant's case for prosecutors to persuade
the court to conceal the applicable law concerning the age of consent
for sexual activity, and there was certainly no lawful reason for sworn
"officers of the court" to advocate for a false instruction which trans-
formed legal conduct into criminal acts far worse than that charged,
especially where the false evidence would in turn supply a basis to pre-
sume criminal intent.

A district court abuses its discretion in denying a requested in-
struction if "(1) the instruction is correct; (2) the instruction is
not substantially covered by the given charge; and (3) the defendant's

12

ability to present an effective defense was seriously impaired by the
failure to give the instruction." United States v. Sirang, 70 F.3d 588,
593 (11th Cir. 1995); United States v. Kottwitz, 200 U.S. App. LEXIS
17263 (11th Cir. 2010)(same).  Indeed, all three Sirang prongs are met
in Appellant's case, without question.  Concerning Exhibit 53 alone,
the inability to defend against the false instruction forced jurors to
conclude that Appellant was willfully engaging in criminal conduct each
time he had sex with someone under the age of 18, even though they were
over the age of legal consent according to the governing law.  Make no
mistake, Appellant's conduct in Prague was lawful according to both U.S.
and Czech Republic law, but jurors were forced to conclude the opposite.
As a result, it is beyond debate that the jury was "seriously impaired."

A trial court has broad discretion in formulating jury instructions,
"as long as those instructions are correct statements of the law."
United States v. Garcia, 405 F.3d 1260, 1273 (11th Cir. 2005)(per
curiam).  The trial court in Appellant's case acted well outside its
discretion when presenting jurors with a false law that spawned false
evidence which prejudiced the defense.  No trial court has the discretion
to deceive jurors into believing material evidence of molestations exist,
when it does not exist but for a false instruction and refusal to caution.

### (ii) The Jury's Truth-Seeking-Function Was Corrupted

The Supreme Court has consistently denounced trials were false evi-
dence was presented by the government.  In Napue v. Illinois, 360 U.S.
264 (1959), the Court held that "The principle that a State may not
knowingly use false evidence, including false testimony, to obtain a
tainted conviction, [is] implicit in the concept of ordered liberty...."
The Napue Court went on to explain that "A lie is a lie, no matter its
subject, and if it is in any way relevant to the case, the district

13

attorney has the responsibility and duty to correct what he knows is false and elicit the truth." Id. This concept is no less important in federal prosecutions involving U.S. attorneys. Here, prosecutors knew that the false instruction was going to force jurors to unjustly conclude that Appellant's sexual conduct in Prague included at least a dozen crimes. They also knew that, in turn, the false evidence would overwhelmingly prejudice the jury against Appellant and supply fabricated proof of intent to disobey or disregard the law. Indeed, prosecutorial intent to deceive jurors is memorialized in the government's motion in limine (Doc. 406), where the corrupt agenda—i.e., that jurors conclude that the sexual conduct in Prague involved **minors**, and not persons old enough to consent to the sexual activity—was first exposed.

To establish a Giglio Claim, Giglio v. United States, 405 U.S. 150, 154 (1972), a habeas petitioner must prove, "(1) the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony; and (2) such use was material, i.e., that there is any reasonable likelihood that the false testimony could have affected the judgment." Guzman v. Secretary, Department of Corrections, 2011 U.S. App. LEXIS 21774 (11th Cir. 2011). For Giglio violations, "the defendant is entitled to a new trial if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." Id. Although Appellant's claim involved false evidence spawned by a false jury instruction, as opposed to false evidence spawned by false testimony, the distinction is without a difference because both events involved corruption of the jury through the presentation of knowingly false material information which prejudiced the defense. To be sure, had the false evidence emerged from testimony rather than iron-clad exhibits, jurors would have at least been able to ignore the false evidence if the witness's credibility was questionable.

There was no such opportunity in Appellant's case because the false evidence was manufactured "under the law" as presented by the court.

Appellant contends that the more "defense-friendly" Giglio materiality standard applies to him for the same reason which justified relief in DeMarco v. United States, 928 F.2d 1074 (11th Cir. 1991), i.e., because the instructional error resulted in "the deliberate deception of...jurors by the presentation of known false evidence [which] is incompatible with 'rudamentary demands of justice.'" Id. (Quoting Giglio). As in DeMarco, the prosecutors in Appellant's case capitalized on the false evidence during closing argument, an act which "contributed to the deprivation of due process rights." Id. Indeed, the only reason prosecutors told Appellant's jurors that condemnation was not sought regarding any sexual conduct with persons over the age of 18-years, is that they wanted jurors to condemn Appellant for all sexual conduct that involved persons under 18, even if perfectly legal. This was a "foul blow" that violates ABA canons of professional ethics.

### (iii) The Presumption Of Innocence Was Eviscerated

"A criminal defendant is presumed innocent until the government proves beyond a reasonable doubt each element of the offense charged, including the mental element (mens rea)." Clark v. Arizona, 165 L.Ed.2d 842 (2006). As applied to mens rea (and every other element of a crime), the force of the presumption of innocence is measured by they force of the showing needed to overcome it, which is proof beyond a reasonable doubt that a criminal defendant's state of mind was what the charge states." Id. In the instant case, prosecutors clearly knew that they lacked proof beyond a reasonable doubt as to Movant's criminal intent, so they endeavored to fabricate intent by way of a false jury instruction. To prove that the government's agenda was deliberate, one

15

need only review the facts: (i) the government's intent is evinced in the motion in limine, where the court was asked to conceal the age of consent laws that applied to the Prague conduct; (ii) prosecutors executed their agenda by advancing the false instruction and by rejecting a cautionary instruction which included the age of consent laws; (iii) prosecutors capitalized on the false evidence during their closing.

Implicit in the concept of a fair trial is the presumption of innocence. Although this presumption is not articulated in the Constitution itself, it is a basic component of a fair trial under the American system of criminal justice. See, generally, United States v. Harris, 703 F.2d 508 (11th Cir. 1983). In Appellant's case, jurors were compelled to believe that he committed at least a dozen heinous crimes and, as a result, was clearly predisposed to disobay or disregard the law, yet each crime was wholly manufactured by the government. This subterfuge undeniably vitiated any legitimate presumption of innocence, with regard to the element of intent and in general, where even the mere presentation of a defendant in shackles (or prison garb) can be sufficiently prejudicial to taint a conviction. See United States v. Battle, 173 F.3d 1343 (11th Cir. 1999); Elledge v. Dugger, 823 F.2d 1439, 1451-1452 (11th Cir. 1987). The prejudice unleashed by a fabricated criminal history of multiple child molestations is, without question, far more harmful to the presumption of innocence than the mere appearance of a defendant in handcuffs or an orange jumpsuit. Said another way, the notion of a "fair trial" was as far removed from Appellant's circumstances as the East is from the West.

### (iv) Summary Regarding Fifth Amendment Violations

It is transparent that Appellant's Fifth Amendment rights were violated in multiple ways. Relief in the form of a new trial is re-

16

quired based on any one of these transgressions. This is true whether one considers the denial of Movant's right to present a defense, United States v. Arias, 984 F.2d 1139, 1143 (11th Cir. 1993)(conviction will be reversed if the Eleventh Circuit finds that "after examining the entire charge, [] the issues of law were presented inaccurately,...or the charge improperly guided the jury in a substantial way as to violate due process"); whether one considers the corruption of the jurors' truth seeking function, See DeMarco (supra)(conviction must be overturned which rests in part upon the knowing use of false testimony if there was any reasonable likelihood that the false testimony could have affected the judgment of the jury); whether one assesses the deliberate sabotage regarding the presumption of innocence, Estelle v. Williams, 425 U.S. 501, 505 (1976)(the presumption of innocence is impaired in cases where some statement or action yields the danger of "a continuing influence throughout the trial...."); or, whether one considers the harm caused by the government's misconduct during closing argument.

As explained in §3, infra, had Appellant's attorney been constitutionally effective on appeal and enumerated these preserved claims, the reviewing panel would have fount it absolutely necessary, based on the aforementioned precedents, to vacate the conviction.

### (b) Sixth Amendment Violation:

#### (i) Appellant Was Denied An Impartial Jury

According to the Supreme Court, in Irvin v. Dowd, 366 U.S. 717, 722 (1961), the Sixth Amendment guarantees the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors." Although jurors in Appellant's case admitted to a bias against homosexual sexual conduct, they agreed to set aside their bias. Prosecutors, however, exploited this natural bias by presenting a plethora of grapic evidence

of Appellant's legal, private, homosexual sexual activities in Prague and then transmogrifying this conduct into criminal acts which were far more heinous than the charged crimes. This prosecutorial misconduct made it impossible, not virtually but actually, for Appellant to receive a fair trial through an impartial jury, especially where jurors were also forced to conclude Appellant lied during opening when insisting that his conduct in Prague was legal, which was the truth but for the false jury instruction. As a result, the verdict must be set aside and a new trial must be held based on applicable laws.

The Supreme Court has recognized that, in terms of the Sixth Amendment, "[d]ue process means a jury capable and willing to decide the case solely on the basis of the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." Smith v. Phillips, 455 U.S. 209, 217 (1982). Appellant had neither: his jurors were poisoned by extraneous, false, material evidence placed before them by three U.S. prosecutors who knew better; and, the trial judge, who was begged by the defense attorney to tell jurors the truth about the age of consent laws, let it all happen. The false evidence corrupted the verdict in two distinct ways: it established false proof of intent, and it spawned unbridled contempt for Appellant in the eyes of jurors. The notion that an impartial jury could emerge after such a "404(b) slaughter" is absurd.

The jury is tasked to determine guilt solely on the basis of the evidence and the court's instructions as to applicable law. Turner v. Louisiana, 379 U.S. 466, 472-73 (1965). Yet, in Appellant's case, the jury was forced to ignore actual evidence while embracing fictional evidence spawned by misrepresentation of the law. Where the Supreme Court has unambiguously defined "an impartial jury" as one that consists of nothing more than "jurors who will conscientiously apply the law to the

18

facts," <u>Wainwright v. Witt</u>, 469 U.S. 412 (1985), the question begged by Appellant's circumstances is this: How could his jurors be impartial when they were instructed to misapply the law and ignore the facts?

In <u>Parker v. Gladden</u>, 385 U.S. 363, 366 (1966), the Supreme Court found that a baliff's comments to three jurors, "Oh, that wicked fellow petitioner, he is guilty," deprived the defendants of a fair and impartial trial jury. In reversing the conviction, the <u>Gladden</u> Court noted that, "petitioner was entitled to be tried by 12, not 9, or even 10, impartial and unprejudiced jurors." <u>Id</u>. at 366. Here, rather than a baliff, it was the trial judge, through the government's false instructions, telling jurors (not <u>some</u> of them, but <u>all</u> of them) just how "wicked" Appellant was, given his "crimes" in Prague and his dishonest efforts to convince jurors the conduct was lawful. No defendant could survive this brand of judicially manufactured taint, a taint which undoubtedly permeated the deliberative process in its entirety. As a result, the verdict must be set aside.

## (ii) <u>Appellant Was Denied The Right To Confront/Rebut Evidence</u>

The Sixth Amendment guarantees a criminal defendant the right to confront evidence at trial. <u>Davis v. Alaska</u>, 415 U.S. 308, 317 (1974) (the prosecution moved for a protective order to prevent any reference, in the course of cross examination, to the juvenile record of a prosecution witness; effective cross examination thwarted; conviction reversed); <u>Crawford v. Washington</u>, 541 U.S. 36, 53-54 (2007)(inability to cross-examine witness who made testimonial statements introduced at trial). And, although the Sixth Amendment guarantees a defendant a "compulsory process for obtaining witnesses in his favor," U.S. Const. amend. VI, "Implicit in this right—as well as in the Fifth Amendment right to due process—is the idea that criminal defendants must be afforded the opportunity to present evidence in their favor." <u>United States v. Berkman</u>,

19

433 Fed. Appx 859, 864 (11th Cir. 2011)(quoting <u>United States v. Hurn</u>, 368 F.3d 1359, 1362 (11th Cir. 2004)). Here, Appellant was not only prevented from "cross examining" (more aptly, "rebutting") the evidence generated by the false instruction, but was prevented from presenting his own instruction that proved his Prague conduct lawful.

According to the Eleventh Circuit, a district court's exclusion of a defendant's evidence violates the Compulsory Process and Due Process Clause guarantees in four circumstances, two of which apply in Appellant's case. <u>United States v. Hurn</u>, 368 F.3d 1359, 1363-65 (11th Cir. 2004). First, "A defendant must generally be permitted to introduce evidence directly pertaining to any of the actual elements of the charged offense or affirmative defense...." Second, "A defendant's right to a fair trial is violated when the evidence excluded is material in the sense of a crucial, critical, highly significant factor." <u>Id</u>. (Quoting <u>United States v. Ramos</u>, 933 F.2d 968, 974 (11th Cir. 1991)); <u>see</u> <u>also</u> <u>Washington v. Texas</u>, 388 U.S. 14, 23 (1967). Jurors had a critical, crucial need to know that the Prague conduct was legal, because this would have prevented any finding of a criminal history/propensity based on fictional information. It also, of course, would have allowed jurors to remain impartial in the deliberations in general. As explained in <u>United States v. Sheffield</u>, 992 F.2d 1164, 1170 (11th Cir. 1993), even collateral matters that are relevant to the <u>mens</u> <u>rea</u> element of the offense must be permitted at trial. And, in <u>United States v. Lankford</u>, 955 F.2d 1545 (11th Cir. 1992), the conviction was reversed because "the district court had prevented [testimony] that the defendant's belief in the legality of his acts was reasonable." <u>Id</u>. at 1550. The jury in Appellant's case needed to understand that "intent to disobey or disregard the law" should not naturally be inferred based on the judicially spawned evidence of criminal recidivism.

20

**(c) The Fifth And Sixth Amendment Violations Amount To Structural Error**

Structural errors are fundamental defects in the trial mechanism that affect the entire "framework within which the trial proceeds, rather than simply an error in the trial process itself." Arizona v. Fulminante, 499 U.S. 279, 310 (1991)(discussing five constitutional errors that are structural). The determination of whether an error is structural turns not so much on the particular rule violated, as on whether the error was of sufficient consequence that the criminal process "cannot reliably serve its function as a vehicle for determining guilt or innocence." Id. at 310. Appellant contends that although the toxic instructions in his case were presented 'during the trial,' and, as such, give the appearance of "trial error," the effect of the improper instructions clearly manifests structural error because the lack of an impartial jury and the inability to confront/present evidence guarantees that the "framework" of the trial process "[could not] reliably serve its function..." Rose v. Clark, 478 U.S. 570, 577-78 (1986).

The Supreme Court's analysis in United States v. Gonzalez-Lopez, 548 U.S. 140 (2006), which dealt with the denial of a Sixth Amendment right to counsel of choice, is informative, where it distinguished between violations of Due Process Clause rights (which require that prejudice be established) and violations of Sixth Amendment rights which specifically exist "to ensure a fair trial." Id. The Court rejected the government's request that relief not be granted unless the trial was found to be unfair. Instead, it held that the deprivation of counsel of choice spawned "consequences that are necessarily unquantifiable and indeterminant, [thus qualifying] as 'structural error.'" Id. (Quoting Sullivan v. Louisiana, 508 U.S. 275, 282 (1993)(the jury guarantee being a "basic protectio[n]" whose precise effects are unmeasurable)).

21

Appellant argues that the "consequences" of the false jury in-
struction (i.e., the false evidence of more than a dozen criminal
molestations) are also necessarily "unquantifiable and indeterminant"
as far as juror bias/prejudice is concerned, because there is no way
to know the extent of juror contempt.  This remains true even if one
is able to determine, specifically, to what degree the jury's delibera-
tions as to "intent to disobey or disregard the law" was poisoned.
Indeed, the natural contempt for any defendant under the instant cir-
cumstances would certainly be substantial, and such sentiments would
pervade the entire trial because they would taint all deliberations at
trial.  Critical to the analysis of structural error: How can one de-
termine the breadth or depth of each juror's prejudice as a result of
the damning molestation evidence fabricated out of whole cloth?

Had Appellant's attorney properly preserved a claim of structural
error at trial, and enumerated this issue on appeal, prejudice would
have been presumed per Brecht v. Abrahamson, 507 U.S. 619 (1993)(struc-
tural defects in the constitution of the criminal trial mechanism defy
analysis and require automatic reversal of a defendant's conviction
during collateral review, because such errors infect the entire trial
process).  The question here—What precedent/standard applies in colla-
teral review when structural errors are not preserved or enumerated?—
was answered in Purvis v. Crosby, 451 F.3d 734 (2006).  In Purvis, the
panel held that even in cases (such as Appellant's) where there is a
legitimate claim of ineffective assistance of counsel, the presumption
of prejudice does not apply unless it satisfies one of the three excep-
tions to the Strickland v. Washington mandate that deficient performance
and prejudice be proved.  Strickland v. Washington, 466 U.S. at 692
(citing United States v. Cronic, 466 U.S. 648, 659 (1984)). As explained
in §3(a), infra, the instant circumstances justify an exception.

## 2. The District Court's Assertion Of "Prior Litigation" Is Unsupported

The district court denied review on the merits by asserting that Ground-5 involved "arguments that were raised or could have been raised in Kapordelis's direct appeal and therefore are not a proper subject for this § 2255 petition." (Doc. 567, p. 12). Appellant contends that the assertion of  prior litigation is clearly erroneous, and offers the following argument to earn a full review by the appellate court.

First, the district court acknowledges that the issue presented by Mr. Samuel on appeal involved "Whether the Trial Court Erred In Permitting the Government to Introduce 404(b) Evidence Relating to Appellant's Legal Sexual Conduct In Prague That Had No Legal Relationship to the Charged Offenses." (Doc. 567, p. 2). As such, it is clear that the district court recognizes that the appellate panel on direct review did not analyze the constitutional harm caused by the false jury instruction's effect on the 404(b) evidence, which is the crux of the § 2255 claim under Ground-5. As the June 1, 2009, Eleventh Circuit decision memorializes, the appellate panel did not address (i) any Fifth or Sixth Amendment violation caused by the false evidence of child molestation produced by the false jury instruction; (ii) the effect of the court's refusal to present a cautionary instruction which included the age of consent laws that governed the Prague conduct; (iii) any of the critical exhibits, specifically Exhibits 46-61, which evinced the harm caused by the false instruction and failure to caution; (iv) whether the trial errors amounted to structural error wherein prejudice must be presumed; or (v) whether plain error analysis under Rule 52(b) would justify relief to the extent that trial counsel failed to object below.  Appellant faults  his appellate counsel for failing to enumerate each of these issues on appeal, even if it required self-condemnation regarding performance at trial.

23

The concept of "prior litigation" was specifically addressed in both <u>United States v. Nyhuis</u>, 211 F.3d 1340 (11th Cir. 2001), and <u>Thomas v. United States</u>, 757 F.3d 1300 (11th Cir. 2009). Although the <u>Thomas</u> Panel did not illuminate the dividing line between habeas motions that bring "the same claim, different day" (hence ignore it), versus a materially different claim (hence consider it), the <u>Nyhuis</u> Panel did broach the issue as follows:

> We discern no fact or other evidence underlying the present due process claim which was not raised by Nyhuis in his prior immunity claim." <u>Nyhuis</u>, 211 F.3d at 1343

This <u>Nyhuis</u> principle applies in Appellant's case because Ground-5 involves several unraised facts/issues which frame a materially different claim than the one considered on direct appeal. In short, the habeas court must address (i) the false jury instruction which was not enumerated as error on direct appeal; (ii) the effect of the false jury instruction on the 404(b) evidence, specifically Exhibits 46-61 which were waived by the appellate panel because Mr. Samuel failed to identify them; (iii) the effect of the failure to caution, which was deemed an issue "in passing" and summarily dismissed in a footnote during direct appeal (<u>Kapordelis</u>, 569 F.3d at 1314 & n. 19); (iv) the Fifth and Sixth Amendment violations which resulted from the aforementioned errors; (v) the question of whether structural error is manifest; and (vi) what the outcome would have been under the <u>Chapman v. California</u> "harmless error" standard, or under a plain error burden to the extent that Appellant's attorney failed to object at trial. These are the facts/issues that make the §2255 claim materially (and critically) different than the far weaker argument that Mr. Samuel advanced on appeal.

Importantly, the district court's assessment of the critical exhibits (Doc. 567, pp. 25-26) is clearly erroneous, where it concludes that "Because Kapordelis's argument on direct appeal was that **the testimony**

and exhibits were erroneously admitted for the same reasons, any failure to specifically cite the exhibits was clearly harmless." (Emphasis added). To be sure, the record proves that the trial testimony was purely speculative in terms of whether any sexual conduct actually took place in Prague, i.e., there was no testimony that Appellant was ever seen engaged in sexual acts with anyone. The exhibits, however, graphically described Movant's sexual activities and identified his sexual partners by their ages. By comparison, the exhibits were far more poisonous in the face of the false jury instruction because they revealed more than a dozen sexual acts with persons under the age of 18 but over the age of legal consent. (See Doc. 536, Att. 6, pp. 20-23, to apprehend the harm caused by the exhibits). The point is this: It is irrelevant that the exhibits and testimony were admitted for the same purpose; what matters is that the exhibits which Mr. Samuel failed to identify evinced the overwhelming prejudice resulting from the false instruction's effect on 404(b) evidence. Where (i) all exhibits were deemed "waived" by the appellate panel, and (ii) witness testimony evaluated during appeal manifested no prejudice on its own, review of the exhibits during § 2255 proceedings is the only way for the court to acknowledge the constitutional harm and provide proper relief.

Second, the assertion of "prior litigation" is without merit because the appellate panel foreclosed a proper harmless-error review (i.e., one based on Rule 52(a), and the precedents in United States v. Olano, Neder v. United States, and Chapman v. California), and consequently failed to provide a "full and fair" or "meaningful" review, based on the false premise that it was Appellant who invited the error. (See Kapordelis, 569 F.3d at 1312-14 for details). Make no mistake, the government, and not Movant, sought to introduce the graphic evidence about Prague. Specifically, (i) the government submitted a motion in

25

limine pre-trial seeking to admit this evidence, and the court granted
the motion with regard to the relevant exhibits; (ii) Prosecutors intro-
duced the Prague evidence (i.e., the details of the exhibits) to jurors
during their opening statement; (iii) Appellant responded, during his
opening (which followed), to the evidence already presented by the govern-
ment.   The transcript memorializes the sequence of these events.

Simply put, the appellate panel clearly erred (factually) when it
concluded that Appellant "preemptively presented the fact of his conduct
in Prague before the jury." Kapordelis, 569 F.3d at 1414, n. 19.   And,
the panel clearly erred (legally) when it declined, on the basis of the
aforementioned false premise, "to point a finger at the district court
for some perceived failure to protect Defendant from any prejudice re-
sulting from the presentation of this evidence." Id.   Indeed, in the
absence of the false premise and false legal conclusion, the panel would
have conducted itself according to Fed.R.Crim.P. 52(a), i.e., by applying
a legitimate harmless-error analysis and granting a new trial.

The "invited error doctrine," according to precedent, stands for the
common sense  proposition that "someone who invites a court down a prim-
rose path to error should not be heard to complain that the court accepted
its invitation and went down that path." Doe v. Princess Cruise Lines,
Ltd., 657 F.3d 1204 (11th Cir. 2011).   Under this doctrine, "the court
will generally not review an error induced or invited by a party through
the submission of an incorrect jury instruction to the judge which passed
on to the jury." United States v. Thames, 642 F.2d 1333 (11th Cir. 2011).
However, in the instant case the government not only admitted the evi-
dence concerning Prague first, it then persuaded the court to present the
false jury instruction which morphed the legal conduct into evidence of
criminal activity from which intent was to be inferred.   Appellant never
invited the government to deceive jurors; the "party" causing the harm

26

was the government, and the "party" complaining of harm is Appellant. To be sure, even if (arguendo) Appellant introduced the Prague evidence of legal, private, homosexual sexual conduct (which he did not), he did not invite the government to present the false jury instruction . This was the act which perverted the evidence and prejudiced the defense.

Third, a claim of "prior litigation" is without merit because binding precedent holds that the "Law of the Case Doctrine" does not apply if (inter alia) "a decision [] is clearly erroneous and, if implemented, would work a manifest injustice." Litman v. Mass Mut. Life Ins. Co., 825 F.2d 1506, 1510 (11th Cir. 1987); Thomas v. United States, 527 F.3d 1300, 1304 (11th Cir. 2009). Here, the panel clearly erred by foreclosing a legitimate harmless-error review, and manifest injustice— defined as plain error that affects substantial rights and the fundamental fairness of judicial proceedings—is undoubtedly present where Appellant's conviction would have been vacated but for the failure to assess harmfulness based on the deprivation of constitutional rights.

Fourth, a claim of "prior litigation" is without merit because the "Law of the Case Doctrine" does not foreclose issues which were presented on appeal but not resolved, Luckey v. Miller, 929 F.2d 621 (11th Cir. 1991), nor does it include all questions "which were present in a case and which might have been decided," Lehrman v. Gulf Oil Corp., 500 F.2d 659, 662-63 (5th Cir. 1974). Here, the appellate panel was specifically tasked by precedent to review jury instructions "as a whole" to determine whether, and to what degree, the jury was misled. United States v. Johnson, 139 F.3d 1359, 1366 (11th Cir. 1998). Nowhere, however, did the panel even hint that it considered the effect of the false jury instruction on deliberations. Thus, the claim of "prior litigation" rings hollow, under the circumstances. Habeas review can right this wrong.

Fifth, a claim of "prior litigation" lacks merit because the "Law

of the Case Doctrine" does not preclude review if considerations of sub-stantial justice requires it." Westbrook v. Zant, 543 F.2d 764, 768 (11th Cir. 1984)(cited in Thomas, 572 F.3d at 1304). For each of the myriad constitutional violations resulting from the instructional error, substantial justice requires that the habeas court protect the integrity of judicial process by providing plenary review and, ultimately, relief.

In closing, it should be noted that statutory authority for habeas review is provided at 28 U.S.C.S. § 2254(d), where § 2254(d)(1) allows review when a court's decision is contrary to, or involves an unreasonable application of, Supreme Court precedent, and where § 2254(d)(2) allows review when a court's decision is based on an unreasonable interpretation of the facts in the record as a whole. Specifically, the appellate court's failure to conduct a "harmless beyond a reasonable doubt" analysis, based on a misplaced "invited error" assertion, ignores Chapman, Olano, and Neder precedents. Also important, the court's finding of invited error is itself clearly based on an unreasonable interpretation of the record, where the transcript proves that the government was the "inviting" party. Indeed, where the government invokes the notion of finality (Doc. 553, p. 23) to thwart collateral review despite clear errors on direct appeal, Appellant urges consideration of the Supreme Court's logic in Jackson v. Virginia, 433 U.S. 307, 323 (1975), where it cautioned that the duty of a federal habeas court to appraise a claim that constitutional error occurred in a criminal proceeding reflects the belief that the finality of a deprivation of liberty through the invocation of the criminal sanc-tion is not to be achieved at the expense of a constitutional right. As applied here, the appellate court should be eager to correct its earlier error and see to it that the Fifth and Sixth Amendment violations in Appellant's case are rectified. See §4, infra, for further argument.

## 3. Procedural Default Is Negated By Appellant's Substantive Claim Of Ineffective Assistance Of Counsel Under Strickland v. Washington

In defense of the district court's assertion of procedural default (Doc. 567, p. 12), Appellant argues that his substantive claim of ineffective assistance of appellate (and, to a limited extent, trial) counsel negates the procedural bar and compels plenary review of Ground-5 on the merits. Strickland v. Washington, 466 U.S. 668, 687 (1984); see also Cross v. United States, 893 F.3d 1287, 1290 (11th Cir. 1990)(in order to determine whether the failure to raise a claim on appeal resulted in prejudice, the merits of the omitted claim must be reviewed). There is no indication that the district court reviewed the merits of Ground-5 at any point, not even when the court was addressing Appellant's claim of ineffective assistance under Ground-16 (Doc. 567, pp. 23-29).

By alleging ineffective assistance of appellate counsel, and advancing the underlying claims in Ground-5 as proof of Mr. Samuel's deficient performance on appeal (and at trial, to the extent that he failed to preserve error for a more favorable appellate review), Appellant is subjected to the Strickland standard, which applies a two pronged test:

> First, the defendant must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.

Mr. Samuel's ineffective assistance on appeal requires one to assess the outcome had he been competent and enumerated a claim alleging Fifth and Sixth Amendment harm resulting from the false evidence spawned by the false jury instruction and failure to caution. Such a review would necessarily include an assessment of the critical exhibits (specifically, Exhibits 46-61) that Mr. Samuel failed to identify in his initial brief, i.e., the exhibits which were deemed "waived" by the appellate panel as a result of Mr. Samuel's ineffectiveness.

The record is clear: Mr. Samuel objected at trial to Government Instruction #17, which falsely instructed jurors that it was unlawful to engage in sexual activity with persons under the age of 18 (i.e., under the age which, according to the court, defined "a minor" for purposes of the instructions). Mr. Samuel also objected to the court's refusal to caution jurors about the age of consent laws which governed Appellant's sexual activity in Prague. Where Mr. Samuel clearly failed, however, was on appeal. Specifically, had Mr. Samuel asked the panel to assess the harm of the false instruction as to Exhibit 53 alone, it would have had no choice but to vacate the conviction and grant a new trial based on longstanding Eleventh Circuit precedent. See United States v. Arias, 984 F.2d 1139, 1143 (11th Cir. 1993); Bass v. Int'l Brotherhood of Boilermakers, 630 F.2d 1058 (5th Cir. 1980)(new trial is required if "trial judge's instructions to the jury, taken as a whole, give a misleading impression or inadequate understanding of the law and the issues to be resolved..."). (See §1(a), supra, for details of this argument; see also Doc. 588, pp. 25-29).

Although the government concedes in its § 2255 response (Doc. 553, p. 20) that the false jury instruction was "a ripe claim for appellate review," Appellant alleges that Mr. Samuel was objectively unreasonable (i.e., incompetent) for failing to enumerate the claim, and choosing instead to present a far weaker claim alleging that the 404(b) evidence should not have been admitted because it was irrelevant. Professional competence, which is what Appellant paid a small fortune for, required Mr. Samuel to recognize that unconstitutional harm did not result sim-ply because the 404(b) evidence was admitted, but, rather, because the 404(b) evidence of legal gay sex was morphed into false evidence of heinous child molestations that did not exist but for the false instruc-tion.

30

## (a) Prejudice Under Strickland Is Transparent

The Strickland holding is unambiguous: to establish prejudice, "the defendant must show that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S., at 694.  As the Eleventh Circuit has explained, if it is decided "the omitted claim would have had a reasonable probability of success, then counsel's performance was necessarily prejudicial because it affected the outcome of the appeal." Eagle v. Linahan, 279 F.3d 926, 933 (11th Cir. 2011)(citing Cross, 893 F.2d at 1290).  A reasonable probability, according to the Strickland Court, is a probability sufficient to undermine the confidence in the outcome. Strickland, 466 U.S., at 694.

Based on these holdings, prejudice must be analyzed by determining the outcome on appeal had Mr. Samuel enumerated a claim which (i) identified the Fifth and Sixth Amendment harm caused by the false jury instruction's effect on the 404(b) evidence, specifically Exhibits 46-61; (ii) alleged additional harm caused by the court's refusal to caution jurors as to the age of legal consent for sexual activity in the absence of picture taking (the appellate panel summarily dismissed Mr. Samuel's effort to argue this matter, by branding the claim one "in passing" and relegating it to a footnote, Kapordelis 569 F.3d at n. 19); (iii) identified the offending exhibits by number, sufficient to provoke appellate review rather than waiver; (iv) asserted structural error, given that the integrity of the trial was sabotaged fundamentally; and, (v) insisted on plain error review to the extent that trial counsel failed to object to any of the relevant matters.

The outcome, of course, is transparent: A new trial would have been granted whether due to (i) Appellant's inability to present a defense; (ii) the Giglio/Napue violation resulting from a corruption of

the jury's truth-seeking function; (iii) the fabrication of evidence of intent to "disobey or disregard" the law; (iv) the inability to confront or cross-examine evidence; (v) the fact of a non-impartial jury; (vi) the vitiation of a presumption of innocence; or (vii) the presence of structural error through which the jury's deliberations were rendered constitutionally unreliable. In short, prejudice abounded, under Strickland, whether one assesses harmless-error using the Chapman v. California standard of "harmless beyond a reasonable doubt," or using Rule 52(b) which reverses "error that is plain and that affects substantial rights." See United States v. Olano, 507 U.S. 725 (1985)(citing United States v. Young, 470 U.S. 1, 15 (1985)).

Appellant's position is that prejudice should be assessed under the Chapman harmless error burden for three distinct reasons. First, to the extent that Mr. Samuel preserved the error by objecting at trial (this would apply to the question of whether Appellant's due process rights were violated based on the inability to present a defense due to the false jury instruction and failure to caution), the "harmless beyond a reasonable doubt" burden is specifically called for under Fed.R.Crim. P. 52(a), and this is the analysis which would have taken place had Mr. Samuel been effective on appeal and enumerated the claim and identified the exhibits.

Second, to the extent that Mr. Samuel failed to specifically object at trial (this would apply to the claim of structural error which Mr. Samuel failed to allege at trial), Movant's claim of ineffective assistance of trial counsel requires that the court relieve any prejudice resulting from a stricter harmless-error burden on appeal. In other words, the habeas court should vacate the conviction if harmfulness would have been noticed under the Chapman precedent, even if it would not have been noticed under plain-error review. Fortunately for Appellant, the struc-

32

tural error in his case would justify relief under both Rule 52(a)
and 52(b).

Third, one must not lose sight of the fact that it was the
appellate panel on direct appeal that foreclosed a proper Chapman
harmless-error analysis based on the false premise that Appellant
invited the error (see §2, supra). In short, the denial of a meaning-
ful appellate review gives the court an opportunity to revisit the
issue and apply Chapman, as it should have done initially.

### (b) Deficient Performance Is Clearly Manifest

In terms of Mr. Samuel's deficient performance, it is clear that
there was no strategic or tactical reason to explain his failure to
claim, on appeal, the multiple violations of Appellant's constitutional
rights at trial, and there was certainly no objectively reasonable
basis for Mr. Samuel to enumerate a far weaker claim concerning "Whe-
ter the Trial Court Erred in Permitting the Government to Introduce
Rule 404(b) Evidence Relating to Appellant's Legal Sexual Conduct in
Prague That Had No Legal Relationship to the Charged Offenses." (Doc.
567, p. 3). "Effective advocates 'winnow out' weaker arguments even
though the weaker arguments may be meritorious." Heath v. Jones, 941
F.2d 1126, 1130-31 (11th Cir. 1991)(citing Jones v. Barnes, 463 U.S.
745, 751-52 (1983)). "Generally, only when the ignored issues are
clearly stronger than those presented, will the presumption of effective
assistance of counsel be overcome." Gray v. Greer, 800 F.2d 644, 646
(7th Cir. 1986). Appellant has overcome the presumption of effective
assistance because the omitted claim was clearly stronger than the one
presented. Incompetence is also exemplified by Mr. Samuel's failure to
identify the critical exhibits which evinced the constitutional harm
spawned by the false instruction.

As in Eagle v. Linahan (supra), "Where, as here, appellate counsel fails to raise a claim on appeal that is so obviously valid that any competent lawyer would have raised it, no further evidence is needed to determine whether counsel was ineffective for not having done so." Eagle, 279 F.3d at 933. And, even though there has never been a hearing to determine why Mr. Samuel raised the far weaker argument on appeal, rather than the far more prejudicial issue under the U.S. Constitution, "no conceivable reason that [Mr. Samuel] might have offered would have made [his] failure to pursue the claim reasonable. [His] failure to raise it, standing alone, establishes his ineffectiveness." Id.

According to the Strickland Court, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. In the instant case, not only did Mr. Samuel sabotage the adversarial process by not objecting to structural error at trial, but he failed to enumerate on appeal the most important claim imaginable: violations of both the Fifth and Sixth Amendments which produced a fundamentally unfair trial. Simply put, the very errors that Mr. Samuel failed to raise were ones that sabotaged any opportunity for an "adversarial process." Indeed, the false instruction compelled jurors to embrace the government's fictional evidence of criminal conduct while ignoring the truth of the matter. There is nothing adversarial about a process through which one party in a case convinces the court to violate the province of the jury through deliberate misrepresentation of the law. In fact, such a process perverts the core Strickland expectation: "A fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of a proceeding." Strickland, 466 U.S., at 685 (emphasis added).

## (c) <u>Prejudice Should Be Presumed</u>

Despite having established prejudice under <u>Chapman</u> and Rule 52(b), as <u>Strickland v. Washington</u> requires for the typical IAC claim, Appellant contends that prejudice should be presumed because he has met one of the <u>Cronic</u> exceptions to <u>Strickland</u>'s mandate that prejudice be proved. (See §1(c), <u>supra</u>). In a nutshell, prejudice should be presumed based on (i) Appellant's inability to examine or cross-examine the Prague evidence due to the false instruction, and (ii) the fact of a non-impartial jury spawned by the false evidence of heinous molestation crimes, as opposed to "a panel of impartial, indifferent jurors." <u>Irvin v. Dowd</u>, 366 U.S. 717, 722 (1961). To be sure, Mr. Samuel was constitutionally ineffective for not alleging, at trial, that the instructional errors were structural errors that prevented a fair trial, even though he warned that "[Jurors] need to know that its not a crime to [engage in sexual activity with someone under the age of 18, in the absence of picture taking]. What's wrong with telling them the truth about that?" (Doc. 536, Att. 6, pp. 8-12).

The question begged is this: Was it even possible for a competent attorney, had one been present, to participate in an adversarial process on behalf of his client, under circumstances where the court itself thwarted effective cross examination (or examination, for that matter) of the evidence at trial? The Supreme Court, in <u>Davis v. Alaska</u>, 415 U.S. 308 (1974), says NO! Specifically, the <u>Davis</u> Court confronted a case where prosecutors had moved at trial for a protective order to prevent any reference, in the course of cross-examination, to material evidence. On certiorari, the Court reversed and remanded. In <u>Chadwick v. Green</u>, 740 F.2d 897 (11th Cir. 1984), the Eleventh Circuit specifically refers to <u>Davis</u> as one of the cases in <u>Cronic</u> which warranted a presumption of prejudice because "the adversary process

35

itself [was rendered] presumptively unreliable [by the circumstances]."
Id. In Appellant's case, the presumption of prejudice is even more
justified, since he was denied not only a credible opportunity to
rebut the false evidence, but an opportunity to present evidence in
the first place, i.e., iron clad proof that the Prague conduct was law-
ful under both Czech and U.S. law.

As the Chadwick Panel explained, 740 F.2d at 901:

> In Cronic, the Court carved out a narrow exception to [Strickland's]
> general rule that a defendant must demonstrate prejudice: a showing
> of prejudice is not necessary if there are circumstances that are
> so likely to prejudice the accused that the cost of litigating
> their effect in a particular case is unjustified. Circumstances
> which would warrant a presumption of prejudice from counsel's in-
> effectiveness are those where "the adversarial process itself is
> [rendered] presumptively unreliable [by the circumstances]." The
> Court cited as examples the cases of an accused who was denied
> counsel at a critial stage of the trial and a defendant whose law-
> yer had been denied the right to effective cross-examination. It
> is within these narrow range of cases examplified by such circum-
> stances that the petitioner's ineffective assistance claim must
> fall to gain relief without the showing or prejudice. (Internal
> quotations and citations omitted)(emphasis added by Appellant).

Appellant's circumstances fall clearly within the "narrow range"
of circumstances requiring the presumption of prejudice, because the
court acquiesced to the prosecutor's demand that jurors be deceived,
and this deception stripped the trial of any "adversarial" potential.
Add to this defect the fact of juror bias, and the notion that there
was an adversarial forum producing an objective outcome is as prepos-
terous as it is disturbing. This is why a new trial is essential.

In Strickland, the Supreme Court was willing to presume prejudice
in three circumstances  because they "involve impairments of the Sixth
Amendment right that are easy to identify and, for that reason and be-
cause the prosecution is directly responsible, easy for the government
to prevent." Id., at 2067. Although it might be proper to fault Mr.
Samuel for not objecting "loud enough" or "clear enough" at trial and
on appeal, the government is to blame for corrupting the process itself.

In Blanco v. Singletary, the Eleventh Circuit again addressed the Supreme Court's binding precedent concerning the presumption of prejudice, and reinvigorated the circuit's Chadwick holding:

> Exceptions to the [Strickland v. Washington][prejudice] standard are appropriate only when the circumstances would offend basic concepts of due process. When such prejudicial circumstances exist, the concern is with procedural fair trial requirements, and not with whether the defendant would not have been found guilty. Blanco v. Singletary, 943 f.3d 1477, 1496 (11th Cir. 1991)(quoting Chadwick)(emphasis by Appellant).

The circumstances in Appellant's case not only offend "the basic concepts of due process," but offend the core Sixth Amendment rights that establish prerequisites for a fair trial. Where it was rather easy in Singletary to determine the particular prejudice flowing from the errors during trial, it is impossible to know the extent to which jurors in Appellant's case were poisoned by the false evidence of molestation crimes spawned by the false jury instruction. Indeed, the only prejudicial effect that can be ascertained for certain is limited to the fabricated evidence of intent, which was substantial.

### (d) Summary

Appellant's claim of ineffective assistance of counsel (appellate, and, to a limited extent, trial), under Ground-16, justifies habeas relief where Ground-5 was advanced as proof of Mr. Samuel's objectively unreasonable and incompetent performance. No lawyer can claim that he has attempted to represent an adversarial posture where it is clear (i) both Fifth and Sixth Amendment violations poisoned the jury's truth-seeking province, and (ii) he failed to claim the errors on appeal (or preserve them at trial, to the extent relevant). Although it is easy to adduce sufficient prejudice to warrant that the conviction be vacated, prejudice must be presumed based on Strickland and Cronic.

## 4. Any Procedural Default Is Overcome Based On The Existence Of "Cause And Prejudice" Under Massaro v. United States

The general rule is that "claims not raised on direct appeal may not be raised on collateral review unless petitioner shows cause and prejudice." Massaro v. United States, 538 U.S. 500, 504 (2003). The burden is on the petitioner to show that he was justified in failing to raise an issue on direct appeal and that he suffered actual prejudice from the alleged error that he failed to plead. Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994).  To demonstrate cause for procedural default, Appellant must show that "some objective factor external to the defense" prevented him (or his counsel) "from raising claims on direct appeal and that this factor cannot be fairly attributable to [Appellant's] own conduct." Lynn v. United States, 365 F.3d 1225, 1235 (11th Cir. 2004); see also Murray v. Carrier, 477 U.S. 478, 488 (1986).

Appellant alleges that the "external factor" which provides "cause" in his case, apart from the claim of IAC addressed supra, pertains to the appellate panel's (on direct appeal) false premise of "invited error" and the consequences of that false premise: specifically, the Eleventh Circuit failed to conduct a "full and fair" or "meaningful" appellate review, i.e., one which applied a Chapman v. California harmless error analysis.  The details of this claim are addressed in §2 (supra), pp. 22-24.  Suffice it here to say that habeas review is required based on 28 U.S.C.S. § 2254(d)(2)(facts not supported by a reasonable interpretation of the record as a whole), and the binding precedents in Lynn and Carrier (supra).  In short, Appellant's attorney was unable to object to the appellate panel's unreasonable fact-finding because it did not present until after the appeal had been filed.  The § 2255 venue is a proper one to vet this issue.

38

The facts are clear: (i) it was the government, and not Appellant, who moved the court to introduce the Prague evidence through its motions in limine; (ii) the court granted the government's request and admitted the text documents prior to opening statements (Tr.Tr., pp. 81-85); (iii) the government addressed the Prague evidence during its opening statement, which preceeded Appellant's opening statement (Tr.Tr. pp. 104-105); (iv) Appellant only responded, during his opening statement which followed, to the government's evidence (Tr.Tr., pp. 131-135). Simply put, there was no reasonable basis for the appellate court's finding that "Defendant preemptively presented the fact of his conduct in Prague before the jury," or that "Defendant chose to focus the jury's attention on his conduct in Prague in his opening argument, well before the district court ruled on his objection, and throughout the trial." Kapordelis, 569 F.3d at 1314 & n.19. In sum, "cause" is clearly established.

Actual prejudice is transparent, because the appellate court used the false premise of "invited error" to avoid a legitimate harmless error analysis as required under Fed.R.Crim.P. 52(a), and to avoid a plain error review under Rule 52(b). Had the appellate court not unreasonably found that any error was invited, it would have recognized that the government failed to meet its burden of proving harmlessness beyond a reasonable doubt under Chapman v. California, 386 U.S. 18 (1967); Neder v. United States, 527 U.S. 1, 15 (1999): United States v. Olano, 507 U.S. 725, 734-34 (1993). Indeed, Appellant specifically rebutted (in his reply on direct appeal) the government's bogus assertion (in its responsive pleading) of an invited error, and he also made it clear that the false jury instruction, coupled to the trial court's refusal to caution jurors regarding the age of consent laws, poisoned juror impartiality and contaminated any finding of intent.

39

Had the appellate panel assimilated this information, rather than ig-
nore it based on the government's bald/false assertion of invited error,
it would have concluded that Appellant's due process rights were com-
promised due to a corruption of the Jury's truth-seeking function, and
it would have assessed a structural error on the basis of clear Sixth
Amendment violations. In short, a "full and fair" appellate review
would have resulted in the grant of a new trial where Appellant's Fifth
and Sixth Amendment rights remained relevant. (See App.R.Br., pp. 23-30).

### D. Summary

Ground-5 does not amount to "relitigation" because it involves a
constitutional claim that was not addressed on direct appeal, as well
as evidence that was never passed on by the panel. Evaluating the
Fifth and Sixth Amendment harm caused by the false jury instruction's
effect on the 404(b) evidence, particularly the exhibits that were
deemed waived due to Mr. Samuel's ineffective assistance, is a far
different task than evaluating whether the 404(b) evidence should have
been admitted when it involved legal conduct.

Review is proper under § 2255 because the district court's asser-
tion of procedural default is either negated based on Appellant's IAC
claim, or overcome based on the existence of "cause and prejudice"
above and beyond that spawned by the ineffective assistance claim.

Relief, in the form of a new trial, is absolutely necessary,
whether one considers Appellant's inability to present a defense, the
Giglio/Napue violation resulting from the corruption of the Jury's
truth-seeking function, the false evidence of intent fabricated by the
false evidence of molestations, the inability to cross-examine evidence,
the evisceration of the presumption of innocence, the misconduct during
the government's closing argument, the lack of an impartial jury, or

the presention of structural error.  Prejudice must be presumed under
Strickland and Cronic, because the jury instructions deprived Appellant
of the core mechanisms through which an "adversarial process" manifests
itself: examination of evidence by way of an impartial panel of jurors.
END OF BRIEF REGARDING QUESTION #2.


By presenting this brief to the instant panel, Appellant hopes
to have convinced its members that § 2255 relief is necessary due to
a constitutional violation in the trial process which rendered it
anything but fundamentally fair, and due to the absence of any proce-
dural hurdles which unscalable.  Judge Wilson clearly erred when he
concluded that these issues were unbatable, and the instant panel
should issue a COA so that justice can prevail on appeal.

### III. Judge Wilson Also Erred When Concluding That Appellant Failed To Establish The Debatability Of The Denial Of A Constitutional Right Or Of Errors In The District Court's Procedural Rulings Regarding The Other Questions Presented In The COA Petition.

There were a total or thirteen questions presented in Appellant's
COA petition.  Eight of these dealt with claims that were denied on
the basis of an asserted procedural bar. Three of these dealt with
claims that were supposedly assessed on the merits.  Two involved proce-
dural errors that took place during the § 2255 process itself.

Appellant outlines infra each question, while identifying facts
and law which support the conclusion that Judge Wilson erred when re-
fusing to authorize a COA as to those issues.  The instant panel is
asked to consider all questions de novo, given the fact that Question
#2 clearly deserved to have a COA issued.  The truth is, it is entirely
possible that Judge Wilson was never even asked to review these claims
himself, given the overwhelming justification for a COA as to Question
#2 alone.

## A. QUESTION #1: Fifth Amendment/Double Jeopardy Claim:

In this question, Appellant argued that the merged convictions to Counts 5 and 6 with Count 7, violated his Fifth Amendment right to be free from double jeopardy, where (i) the district court concluded that Counts 5 and 6 were multiplicitous with Count 7, (ii) Appellant's attorney was ineffective (see Question #9(A)) for not having appealed this issue under United States v. Ball, 470 U.S. 856, 864 (1985)("the only remedy consistent with congressional intent is for the [district] [c]ourt, where the sentencing responsibility resides, to exercise its discretion to vacate one of the underlying convictions"), and (iii) new controlling law in the Eleventh Circuit mandates that the conviction be vacated, as opposed to merged (which is what happened in the instant case). See United States v. Bobb, 577 F.3d 1366, 1372 (11th Cir. 2009)("Where we conclude that a defendant has suffered a double jeopardy violation because he was improperly convicted for the same offense under two separate counts, the only remedy consistent with congressional intent is that described in United States v. Ball (supra), i.e., that one of the convictions be vacated, and not merged as in Appellant's case).

Judge Wilson erred in deeming this issue undebatable, as there was an unquestionable argument supporting the conclusion that a constitutional violation took place and that any procedural bar was overcome.

## B. QUESTION #3: Substantive Due Process And Eighth Amendment Claim:

In this question, Appellant argued that it violated his Fifth and Eighth Amendment rights to affirm an enhanced term of imprisonment that was based in large part on his decision to engage in legal, private,

homosexual sexual conduct, i.e., conduct that took place three-years prior to arrest and was unrelated to the charged conduct involving child pornography. Indeed, there was irrefragable evidence that the district court enhanced the prison term on this basis, and that the appellate court (on direct appeal) affirmed on this basis (it is unclear whether the appellate panel misunderstood the law or the factual record). Thus, the only question for review was whether this decision was contrary to, or an unreasonable application of, Supreme Court precedent. See Lawrence v. Texas, 156 L.Ed.2d 508 (2003)(it violates substantive due process to punish, by as much as a fine, legal, private, homosexual activity); see also North Carolina v. Pearce, 23 L.Ed.2d 656 (    ) ("[T]o punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort.").

With regard to any alleged procedural default, Appellant made it clear that he faulted his attorney for not having appealed this "slam dunk" issue, but the district court never even mentioned this specific appellate-IAC claim, much less address it for appellate review. Instead, the district court praised Appellant's attorney for having strenuously objected to the court's effort at trial to enhance on this basis. The fact is, there was no strategic reason for Mr. Samuel's failure to appeal a constitutional trespass that he confronted at trial, and he was objectively unreasonable for not enumerating this issue on appeal.

Equally important, the decision to enhance the prison term on the basis of legal, private gay sex violated the Parsimony/"Goldilocks" Principle codified at 18 U.S.C. § 3553(a)(2), which mandates that the sentence be no greater than necessary to "reflect the seriousness of the offense, [] promote respect for the law, and [] provide just punish-ment for the offense" (see §§(A)), afford "adequate deterence for cri-minal conduct" (see §§(B)), or to "protect the public from further crimes

of the defendant" (see §§(C)).  To be sure, none of these objectives is promoted by a court's determination to imprison a person longer just because he transiently (this conduct began in 1998 and ended in 2001) engaged in legal homosexual acts in the privacy of his home in Prague.

Judge Wilson erred in deeming this issue undebatable in terms of whether or not a constitutional violation occurred, or whether Appellant's attorney was ineffective.  There is no question that the Eleventh Circuit must debate whether or not a court of law can enhance a prison sentence (through the use of a variance) for conduct deemed protected under the Fifth and Eighth Amendments.  See also Question #9(C).

## C. QUESTION #4: Fourth Amendment Claim Concerning Search Of Home:

In this question, Appellant presented three separate arguments to prove that the search of his home in Georgia violated the Fourth Amendment.  The first argument alleged that the appellate panel (on direct appeal) violated the precedent established in Zurcher v. Stanford Press, 436 U.S. 547 (1978), when it concluded that the search was based on probable cause where "The evidence presented by the affiant, once edited under Franks [v. Delaware], was sufficient to provide a reasonable basis for concluding that Defendant could be engaged in sex tourism and that Defendant would reasonably keep evidence of such activities...in his home...." Kapordelis, 569 F.3d at 1312.  The law is clear, a warrant may not issue based on mere suspicion of criminal conduct:

> [O]nce it is established that probable cause exists to believe that a federal crime has been committed a warrant may issue for the search of any property which the magistrate has probable cause to believe may be the place of concealment of evidence of the crime.  Zurcher, 436 U.S. at

Indeed, a reasonable basis to believe that a crime could be, might be, or may be taking place (reasonable suspicion) is a far cry from the standard announced by the Supreme Court, i.e., a reasonable basis to believe that a crime has been committed (probable cause).

44

The second argument underlying the Fourth Amendment claim deals with the appellate court's unsupported conclusion that the post-Franks facts "suggested" that Appellant had engaged in unlawful sexual conduct with juveniles in Russia.  Notwithstanding the fact that "a hint" or "insinuation" of criminal conduct (see Merriam-Webster's Collegiate dictionary, under the definition of "suggest") falls short of probable cause, the post-Franks record clearly establishes that all three claims of molestation attributed to Russian juveniles were worthy of redaction under either Franks v. Delaware or Illinois v. Gates.  In short, Appellant proved in his COA petition that there was no support in the record as a whole for the appellate court's factual finding, and he asserted a right to § 2255 review based, in part, on 28 U.S.C. § 2254(d)(2).

The third argument underlying the Fourth Amendment claim alleged that Appellant was denied a full and fair hearing at the lower court (the district court refused to provide an evidentiary hearing concerning the Russian related allegations), and a meaningful review at the appellate court on direct appeal (the panel erroneously concluded that Appellant "agreed with" or "conceded to" the district court's Franks and Gates analyses).  Section 2255 review was justified on the basis of Stone v. Powell, 428 U.S. 495 (1976), and its progeny at the Eleventh Circuit.  See Bradley v. Nagle, 212 F.3d 559, 565 (11th Cir. 2000)("[F]ull and fair consideration in the context of the Fourth Amendment incudes at least one evidentiary hearing in a trial court and the availability of meaningful appellate review when there are facts in dispute");  Peoples v. Campbell, 377 F.3d 1208 (11th Cir. 2004)(there was ample evidence of meaningful review following an exhaustive evidentiary hearing); Hearn v. Florida, 326 Fed. Appx. 519 (11th Cir. 2009)(the state court failed to make "explicit findings on matters essential to" Hearn's Fourth Amendment argument).  Simply put, had the district court

reconciled all the factual inaccuracies presented below, or had the appellate court reconciled the objections presented on appeal, there would have been no basis to ever conclude that post-Franks evidence hinted at molestation or provided a reasonable basis to merely suspect that a sex tourism crime took place.

Judge Wilson erred in deeming this Fourth Amendment issue undebatable in terms of whether a constitutional violation occurred, and there were several different reasons under the law which justified habeas review from a procedural point of view.

## D. QUESTION #5: Fifth Amendment Violation As To Contos's Testimony:

In this question, Appellant challenged the appellate court's decision to resurrect Deno Contos's trial testimony for purposes of enhancing the sentence based on "history of abuse." As the record makes pellucidly clear, Mr. Contos's testimony was deemed untrustworthy during the trial and unreliable at sentencing. These factual findings on Judge Pannell's part led him to refrain from identifying Contos's testimony as a basis for the sentence enhancements. Combing the record for something, indeed anything, to support Judge Pannell's bald claim of a history of abuse, the panel violated Appellant's Fifth Amendment right to reliable evidence for sentencing purposes when it resurrected Contos's testimony as if worthy.   Kapordelis, 569 F.3d at 1318. See United States v. Reme, 738 F.2d 1156, 1167 (11th Cir. 1984)(to establish a due process violation based on the court's reliance on false or unreliable information, the defendant must show "(1) that the challenged evidence is materially false or unreliable, and (2) that it actually served as the basis for the sentence"); United States v. Satterfield, 743 F.2d 827, 840 (11th Cir. 1984)("Due process, in the sentencing context, requires that the defendant be given adequate notice and an

46

opportunity to contest the facts relied upon to support a criminal penalty"); Gardner v. Florida, 430 U.S. 349 (1977)(defining the right to confront evidence as one of substantive due process); Townsend v. Burke, 334 U.S. 736 (1948)(same).

This claim also alleged that the appellate panel on direct appeal unreasonably blamed Appellant's attorney for failing to provide sufficient evidence to support the claim of unreliability. Kapordelis, 569 F.3d at 1318, n. 21. The fact is, Mr. Samuel did what he was supposed to do: (i) he objected to the statement in the PSR where Mr. Contos's statement was referenced; (ii) he objected to Contos's testimony as a basis for the government's Obstruction of Justice enhancement; and (iii) he objected to the use of Contos's testimony to support an enhanced sentence (due to unreliability) when addressing the lack of support for a history of abuse (see Brief on Appeal, pp. 53 -55). To be sure, the court expressly found Contos's testimony unreliable at sentencing when addressing the objections in the PSR. As such, there was nothing more that Mr. Samuel needed to say in the appeal brief because it was the government's burden to object to the court's finding of unreliability. See United States v.Paneiro, 389 F.3d 1359, 1366 (11th Cir. 2004)(Credibility findings are within the province of the factfinder).

Judge Wilson erred when he deemed the existence of a Fifth Amendment violation undebatable, and he also erred when he deemed the lower court's procedural decision undebatable. The panel's new finding of fact with regard to Contos's trial testimony -- i.e., that it was somehow reliable for sentencing purposes -- was a "new fact" which was reasonably unavailable when the appeal was filed. Carrier V. Murray, 477 U.S. 478 (1986), specifically states that "cause" would be established by a showing that the factual or legal basis for a claim was reasonably available to counsel when the appeal was filed.

47

## E. QUESTION #6: Fourth Amendment Violation As To Search Of Laptop:

In this question, Appellant alleged that the search of his laptop computer one-month after it was seized in New York was unreasonable under the Fourth Amendment based on new controlling law. See United States v. Mitchell, 565 F.3d 1347 (11th Cir. 2009)(search of hard drive 21-days after it was seized based on probable cause was unreasonable under Fourth Amendment). Appellant also alleged that his appellate attorney was constitutionally ineffective when he failed to properly argue the other two critical issues in the case, i.e., whether the search was a legitimate search at the "functional equivalent of the border" or search "incident to arrest." To be clear, the panel never passed on these claims because they were deemed "waived" and "not properly presented." Kapordelis, 569 F.3d at 1312.

Appellant's argument under this question in his COA petition clearly establishes that the search delayed by 30-days was not a reasonable search under the Fourth Amendment, not a legitimate search at the functional equivalent of the border (where New York was the functional equivalent), and not a search incident to arrest (where the search took place prior to arrest and was based on limited consent, and where the arrest was not supported by probable cause). As such, Judge Wilson clearly erred when concluding that Appellant failed to show the debatability of a constitutional violation, and he also erred when concluding that there was a procedural bar to this IAC-related claim which involved new controlling law. See Question #10(II)(B), as well.

## F. QUESTION #7: Due Process Violation Resulting From Pros. Misconduct:

In this question, Appellant exposed the government's exploitation, during closing argument, when calling the jury's attention to false evidence manufactured through (i) the false instruction complained of in Question #2, or (ii) the false testimony provided by the government's

48

forensic computer expert as to the number of illicit images discovered on Appellant's computers. These prejudicial comments so unfairly affected the trial that they resulted in the denial of due process. Darden v. Wainwright, 477 U.S. 168 (1986). To be sure, A Giglio claim, Giglio v. United States, 405 U.S. 150 (1972), involves an aggravated type of Brady violation in which the suppression of evidence enables the prosecutor to put before the jury what he knows to be false or misleading evidence, Ford v. Hall, 546 F.3d 1326, 1332 (11th Cir. 2008), or allows the prosecutor himself to make a false statement to the jury, United States v. Alzate, 47 F.3d 1103 (11th Cir. 1995).

Judge Wilson erred when concluding that the fact of a constitutional violation as to this question was undebatable, and he also erred when concluding that the district court's procedural ruling was equally undebatable. This claim involves, like Questions 1, 2, 3, and 6, a governing claim of appellate-IAC which was never addressed by the district court. How could the district court be "correct" in its procedural ruling if it ignored the IAC claim and never broached the merits of the underlying substantive claim evincing IAC?

## G. QUESTION #8: Multiple Procedural Errors During Sentencing:

In this question, Appellant presented twelve distinct procedural errors which took place during sentencing, some of which manifested constitutional violations in, and of, themselves.

Judge Wilson erred when concluding that the fact of a constitutional violation was undebatable, and he also erred when concluding that the district court's procedural ruling -- one where that court simply ignored the appellate-IAC claim which negated any asserted procedural default -- was equally undebatable. Rather than burden this motion for reconsideration with a large number of facts to prove these

points, Appellant refers the instant panel to his COA petition, Questions 8 and 9(E).

# H. QUESTION 9(A-E): Appellate-IAC Involving Claims Not Enumerated At All:

In this question (which is comprised of five distinct events related to ineffective assistance of counsel), Appellant advances Grounds 15 (Question #1), 5 (Question #2), 9 (Question #3), 7 (Question #7), and 12-14 (Question #8) as the underlying support for his substantive claim of ineffective assistance of appellate counsel. Sadly, the district court did not address even one of these IAC claims, nor did it assess the merits of the underlying claims to explain how Mr. Samuel could have been anything but ineffective for not having raised them. See Cross v. United States, 893 F.2d 1287, 1290 (11th Cir. 1990)(in order to determine whether the failure to raise a claim on appeal resulted in prejudice, the merits of the omitted claim must be reviewed).

In each of these appellate-IAC claims, the underlying claim was clearly stronger than the claims Mr. Samuel enumerated on appeal. As such, and because relief would have been provided on appeal had the issues been enumerated, Mr. Samuel was constitutionally ineffective for not having done so. Heath v. Jones, 941 F.2d 1126, 1130-31 (11th Cir 1991)("[E]ffective advocates 'winnow out' weaker arguments even though the weaker arguments may be meritorious.")(citing Jones v. Barnes, 463 U.S. 745, 751-52 (1983)); Gray v. Greer, 800 F.2d 644, 746 (7th Cir. 1986)("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance be overcome."). Make no mistake, each of the underlying claims which were omitted by Mr. Samuel during the appeal satisfied both prongs of the Strickland v. Washington standard, Strickland v. Washington, 466 U.S. 668, 696 (1984)(defining deficient performance and prejudice resulting

therefrom), where each underlying claim would have prevailed on appeal had they been presented.

Judge Wilson erred when concluding that it was undebatable in terms of whether Mr. Samuel provided effective assistance on appeal, as there is no reasonable argument that would counter the belief that success on appeal was inescapable based on Eleventh Circuit or Supreme Court precedents, had the claims been enumerated.

## H. QUESTION 10: Appellate-IAC Involving Claims Not Properly Raised:

This question involves two claims on direct appeal which were deemed waived by the panel because Mr. Samuel improperly raised them. What Mr. Samuel did was make note of the reversible errors dealing with the search of Appellant's laptop computer (Question #6) and home in Georgia, but then refer the panel to the briefs filed below. There can be no doubt that any competent attorney would have known that the Eleventh Circuit prohibits such an effort. Kapordelis, 569 at 1312 (deeming the claims waived and citing case law to support the waivers due to improper argument).

Because each of the underlying claims would have succeeded on appeal, Mr. Samuel was objectively unreasonable for failing to present them properly. Judge Wilson erred when he concluded that this was not a debatable constitutional violation.

## I. QUESTION 11: Ex Post Facto Clause Violation Reviewed On The Merits:

In this question, Appellant argued that his constitutional rights were violated based on new controlling case law. See United States v. Wetherald, et al., 636 F.3d 1315 (11th Cir. 2011)(reversal is required if there is but an "increased risk" of harsher punishment due to the Ex Post Facto Clause violation. In Appellant's case, there was far more than a substantial risk of a harsher sentence because the trial

51

court specifically enhanced based on an ex post facto factor (number
of images possessed), and the sentencing judge never even addressed
the error resulting from the use of the wrong Guidelines book, much
less "specifically state" that he would have enhanced even if the
error was corrected.

Judge Wilson clearly erred by failing to acknowledge the debata-
bility of a constitutional violation under the circumstances, and a
COA should issue as to this question by way of this motion to recon-
sider.

## J. QUESTIONS 12 and 13: Procedural Errors During § 2255 Process

In Questions 12 and 13, Appellant alleges two procedural errors
which took place during § 2255 review, neither or which were addressed
in Judge Wilson's order.  Appellant urges the instant panel to review
these issues during its reconsideration of Judge Wilson's order.

## IV. Closing

Appellant has demonstrated that Judge Wilson erred in denying a
COA as to Questions 1 through 13, and he asks the instant panel to
correct this error.  By proving that actual relief is due given the
effect of the false jury instruction on the 404(b) evidence, a COA
as to Question #2 is undeniably justified given the reduced threshold
burden required for a COA: mere debatability.  A COA is justified as
to the other questions because Judge Wilson failed to recongize the
strength of the constitutional claims and the proof that the district
court's procedural rulings were reckless.

No court of law should be allowed to escape a loud rebuke for the
misconduct which took place in Appellant's case.  The search warrant
should have been deemed unlawful.  The trial should have been deemed
corrupted by a false jury instruction and pervasive governmental mis-

conduct.  And, the process of direct appeal should have been repaired where the panel was responsible for constitutional trespasses.  As for the unconscionable and myriad sentencing violations, it must never be held that a judge can get away with doling out prison time based on legal, private gay sex; a decision not to admit guilt; a decision to grieve governmental misconduct; a decision to bring witnesses to testify for the defense; or unreliable testimony, etc.  The appeals court is in a position to reverse these miscarriages of justice, through a process that was specifically designed to do so, 28 U.S.C. § 2255.

Wherefore, Appellant prays that a COA issue as to each question presented in his Petition for Certificate of Appealability.

NO CHANGES IN CERTIFICATE OF CORPORATE INTERESTS.

*[signature]*

Respectfully submitted, this 31st day of January, 2013,

*[signature]*

Gregory C. Kapordelis, Appellant
Fed. I.D. #63122-053
Marion U.S. Penitentiary
P.O. Box 1000
Marion, Illinois  62959

### CERTIFICATE OF SERVICE

Appellant, Gregory C. Kapordelis, hereby affirms that he has mailed a copy of this Motion for Reconsideration By A Three-Judge Panel to AUSA Robert C. McBurney, 75 Spring Street, S.W., Atlanta, Georgia 30303, first-class postage pre-paid, this 31st day of January, 2013.

Affirmed, January 31, 2013,

*[signature]*

Gregory C. Kapordelis, Appellant