IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

```
                                    )
GREGORY C. KAPORDELIS,              )
                                    )
                  Petitioner,       )
                                    )
v.                                  )    Appeal No. 12-13456-E
                                    )
UNITED STATES OF AMERICA,           )
                                    )
                  Respondant.       )
                                    )
                                    )
```

PETITION FOR THE COURT'S REVIEW
OF JUDGE WILSON'S ORDER AS SINGLE-JUDGE

Now comes Petitioner, Gregory C. Kapordelis, appearing pro se,
to respectfully petition the Eleventh Circuit to review Judge Wilson's
"single-judge order" of January 9, 2014, which directs the Clerk of
Court to (1) return unfiled Petitioner's Motion to Recall Mandate, and
(2) not file any further documents submitted by Petitioner related to
the instant appeal. The Clerk of Court is cautioned that this petition
is filed pursuant to Federal Rule of Appelate Procedure 27(c), which
sets forth that "The court may review the action of a single judge."
To be clear, the Clerk has two choices: He can display his loyalty to
Judge Wilson's unlawful directive to reject future filings (an act which
is certain to promote the establishment of a "government of men"); or,
he can respect Petitioner's procedural due process rights by filing the
instant petition instanter (an act which will ensure that our country
continues to reflect a "government of laws"). His Oath shall inform.

In this petition, it is alleged that Judge Wilson is unjustly bent
on ensuring that there is no appellate review of Petitioner's Motion
to Recuse Judges Pannell and Brill from the 28 U.S.C. § 2255 proceedings,
and no appellate review of the district court's refusal to permit an
amendment to the § 2255 petition (as guaranteed as a matter of course,

1

pursuant to Fed.R.Civ.P. 15(a)(1)). Since this appeal was filed (Doc. 589), Petitioner has made it clear that the recusal issue is one that is guaranteed appellate review as a matter of right, and not discretion. See 28 U.S.C. § 2255, Rule 4, Notes of Advisory Committee ("A Movant is not without remedy if he feels [a judge's recusal is warranted to guarantee impartiality]...He can file an affidavit of bias. And **there is the right to appellate review if the trial judge refuses to grant the motion."**). Petitioner submitted a Motion to Bifurcate the Appeal (Docket Entry August 2, 2014) so that the recusal denial could be considered apart from judgment on issues dependent on the COA process. This motion is still pending. In addition, Petitioner cautioned Judges Wilson and Tjoflat in his Motion for Reconsideration of the Denial of a COA that the recusal issue was still pending and was not subject to the COA process (i.e., to a discretionary determination of whether the appeal would be heard). This notice was ignored.

At the outset, Petitioner objects to the Clerk's conduct in this matter. When Petitioner initially filed his Motion to Recall Mandate on November 27, 2013, the Clerk took it upon himself to "re-name" it a second motion for reconsideration of the COA denial, and returned it unfiled. Petitioner justly objected to the Clerk's usurpation of power and sought judicial intervention by way of a petition that should have been presented to a motion's panel. Instead, the Clerk opted to simply make note of the petition on the docket and file the Motion to Recall the Mandate. Then, rather than present the Motion to Recall Mandate to the motion's panel, the Clerk managed to get Judge Wilson— the person who summarily denied a COA on all issues and never even acknowledged the appeal of the recusal matter—to abdicate jurisdiction by relabeling the recall motion while simultaneously foreclosing review of that order. This endeavor served only to obstruct justice.

2

Where a single-judge's order is subject to review by the Court at large, Fed.R.App.P. 27(c), a single-judge cannot simply thwart any potential review by "directing" the Clerk to ignore the rules that were designed to preserve the integrity of judicial decision-making. Put simply, the Clerk could no more be directed to refuse the review of a single-judge's order than he could be directed to visit Marion Prison and gag Petitioner with duct tape. To paraphrase one of Judge Wilson's dissents, "I doubt that [appellate court judges] have the inherent authority to ignore or override a [clearly articulated federal rule of procedure] in the interest of promoting a professional courtesy." Sahyers v. Prugh, Holiday & Karatinos, 603 F.3d 888 (11th Cir. 2010)(Dissent, Wilson, C.). Make no mistake, relabeling the Motion to Recall Mandate and then ordering it to be unfiled did nothing but protect Judge Pannell by abdicating the jurisdiction that clearly exists by way of recall motions. The following arguments are relevant.

I. **Both the Instant Petition for Review By The Court, and the Motion to Recall the Mandate, Should be Presented to a Three-Judge Motions Panel.**

Although a single judge can rule on any action, he may not do so when the effect is to determine or dismiss an appeal. Fed.R.App.P. 27(c). Under the circumstances here, Judge Wilson seeks to dismiss a legitimate appeal pertaining to the denial of the Motion to Recuse Judges Pannell and Brill from the § 2255 proceedings (Docs. 546, 557, 560), and the denial of the Motion to Amend Ground-20 (Docs. 558, 561, 565), by preventing the Motion to Recall Mandate from being filed. He does this despite the rules of procedure which allow such a motion when there is an allegation of clear error and failure to correct the error would result in manifest injustice. See Eleventh Circuit Rule 41-1(b)("A mandate once issued shall not be recalled except to prevent injustice").

The effect of "relabeling" the recall motion and returning it unfiled is that the two pending issues, i.e., the denial of the motion to recall and denial of the motion to amend, will not be heard on appeal. Because both of these denials were not ruled on by the district court, they are not "final orders" in a § 2255 proceeding and should not be subjected to the COA process. In addition, the denial of recusal is an issue that the § 2255 rules expressly mandate appellate review. A single judge should not be permitted to effectively foreclose any opportunity for these two issues to be heard on appeal. To allow such an outcome, whether through the COA process or the effort to unfile legitimate motions for correction, contradicts Rule 27(c) and 28 U.S.C. § 2253.

Moreover, because Judge Wilson is clearly attempting to usurp the Court's authority by preventing review of his own order thwarting Petitioner's right to appeal, a three-judge panel is necessary to restore the appearance of integrity. The last thing one would want is for Judge Wilson to approach one of his colleagues, say Judge Tjoflat, for example, and ask for cover (Judge Tjoflat ignored Petitioner's right to appeal the recusal issue when he provided cover for Judge Wilson's order denying a COA as to all other matters before the Court). In short, this matter should be assigned at random to a panel, in a manner which preserves the right to an en banc petition or Supreme Court petition should this nonsense continue.

**(a) The Panel's Task With Respect To The Petition For Review**

There are two specific issues that the three-judge panel should confront at the outset: (1) Judge Wilson's obstructive decision to relabel the Motion to Recall Mandate as a second and impermissible Motion for Reconsideration of COA Denial; (2) Judge Wilson's improper

4

effort to thwart review of his order by directing the Clerk to unfile the Motion to Recall Mandate and reject any future filings from Petitioner in this appeal.

As to the first matter, Petitioner has properly sought recall of the mandate (Appendix A) because the Court of Appeals has clearly erred by not allowing the recusal denial and amendment denial to be heard on appeal, as allowed by law. It appears clear that Judge Wilson and Judge Tjoflat either believe, or want Petitioner to believe, that there is no right to appeal the magistrate's order denying recusal. They convey their message not through any express holding that such an appeal is subject to the discretionary process (a conclusion that contradicts the plain meaning of Rule 4 under § 2255, and that conflicts with the nonbinding precedents in two circuits and the decision of one panel in the Eleventh Circuit), but by simply ignoring the fact that Petitioner excluded any argument on this matter in the COA brief because he considered it exempt based on the rules themselves. If the Eleventh Circuit does not allow the recusal claim to be heard on appeal, it is working a manifest injustice concerning Petitioner's procedural due process rights. Renaming the motion and returning it unfiled is a telling act.

A similar argument applies to the appeal of the magistrate's denial of the motion to amend Ground-20, as permitted as "a matter of course" under Fed.R.Civ.P. 15(a)(1). Based on the clear language of the Rule itself, and the unambiguous interpretation of that rule by Judge Tjoflat in Toenniges v. Georgia Dep't of Corr., 2012 U.S. App. LEXIS 26342 (11th Cir. 2012)("When the plaintiff has the right to file an amended complaint as a matter of course, the district court lacks the discretion to reject the amended complaint [even] based on its alleged futility), the refusal to consider this issue on appeal only serves to ensure that the failure to hear the issue below is compounded. Indeed, there can

be nothing "just" in such an outcome, and the Motion to Recall the
Mandate provides a way to correct such an error.  One cannot help
but wonder what it was that compelled Judge Tjoflat to protect Mr.
Toenniges's due process rights but reject any effort to protect
Petitioner's rights given the similar circumstances.  Equally queer,
Judge Wilson agreed to vacate and remand a § 2255 denial in <u>Bellefleur
v. United States</u>, 489 Fed. Appx 323 (11th Cir. 2012)(unpublished),
where he concluded that "A court must give a reason for denial of a
motion to amend," and yet no explanation had been given.  Why is it,
by comparison, that Judge Wilson strains so hard to prevent even
appellate review of the district court's bald rejction to amend in
Petitioner's case?  By renaming and unfiling the motion, mums the word.

Specific arguments aside, one thing is certain: a three-judge
motions panel must determine what has compelled Judge Wilson and Judge
Tjoflat to clearly err by denying Petioner's right to appeal these two
issues, both of which would have undeniably prevailed on appeal had
the opportunity to be heard only been given.

With respect to the second issue, i.e., Judge Wilson's order for-
bidding the Clerk to file any document seeking review of that order
itself, the panel must determine if such an injunction can ever be
lawful when not emanating from a king in a constitutional monarchy.
In short, where a single-judge's order is subject to review "by the
court" in all circumstances, it is preposterous to imagine that a single
judge can direct a clerk to violate rules designed to thwart a contrary
result.  But, this is for the panel to decide, and for an <u>en banc</u> panel
to reconsider if the decision makes a mockery of judicial integrity.

**(b) <u>The Panel's Task With Respect To The Motion To Recall Mandate</u>**

As detailed in the Motion itself (Appendix A), Petitioner has made
valid claims for relief based on the plain meaning of federal rules of

6

procedure, binding and nonbinding case law in the Eleventh Circuit, and persuasive precedential case law in other circuits. Such a presentment requires a credible and legitimate response from the Court, not a sinister effort to unfile a motion and prevent proper review.

If the Eleventh Circuit wishes to hold that the denial of a motion to recuse is subject to the discretionary whims of a single judge during the COA process, rather than to an automatic right to appeal as promised by the Supreme Court through its rules governing Section 2255 petitions (and as adopted by Congress on September 28, 1976; See Act, P.L. 94-426, §1, 90 Stat. 1334), then it should express its position in response to the Motion to Recall Mandate, rather than unfile the motion and ignore the issue altogether. This is typical. Likewise, if the Eleventh Circuit wishes to hold that a magistrate judge can deny a Rule 15(a)(1) amendment for no reason at all, then this authority should be vested in some sort of binding opinion so other circuit courts of appeal recognize the contempt the Eleventh Circuit has for the plain meaning of rules governing procedural due process. Again, all relevant arguments are marched out in the Motion to Recall Mandate, and need not be repeated here.

If the Court is of the opinion that Petitioner's various claims are "without legal merit and cannot be supported by any reasonable argument for an extension, modification, or reversal of existing law, or the establishment of new law; or contain[] assertions of material facts that are false or unsupported by the record; or [are] presented for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation," see Circuit Rule 27-4, a sanction should be issued against Petitioner. Otherwise, the Court should rejoice by doing what it does best, in the light of day: assess the claims and issue an opinion that can withstand further scrutiny.

7

## II. The Motion To Recall Mandate Forces The Eleventh Circuit To Confront Several Important Issues Of First Impression

Because of the unique circumstances in Petitioner's case, the Motion to Recall Mandate requires that the Court address a number of very important questions:

1. Whether a final order in a Section 2255 proceeding automatically overrules any pending objections to a magistrate judge's nondispositive orders, or whether 28 U.S.C. § 636 and Fed.R.Civ.P. 72(a) require a district court judge to expressly rule on the objections?

2. Whether the denial of a recusal motion truly affords a Section 2255 petitioner the right to appeal to the Eleventh Circuit as plainly promised in Rule 4 of Section 2255? In other words: Whether the denial of a recusal motion is appealable as a right and exempt from the COA process which is steeped in discretion accorded to a single judge?

3. Whether Fed.R.Civ.P. 15(a)(1) compels a Section 2255 court to accept a timely filed motion to amend as a "matter of course"?

Because these questions are matters of "exceptional importance" in terms of how § 2255 and § 2254 proceedings are held, they should be answered by a three-judge panel which is subjected to review by an en banc panel of the Eleventh Circuit, and further review by the Supreme Court through the certiorari process. Since the Motion to Recall Mandate has nothing to do with the "denial of a COA," it should not be constrained by Eleventh Circuit Rule 22-1(c), which does not permit panel rehearing or rehearing en banc.

Petitioner understands that the Court endures great pains when it recalls a mandate, but he also is certain that such an event is proper when an appeal has been closed without protecting a petitioner's right to be heard. Fortunately, there is an alternative: the Court can simply grant the pending Motion to Bifurcate the Appeal and "pretend" that the only matters which were adjudicated were those that necessarily had to be appealed by way of a COA (i.e., issues relevant to the Section 2255 court's "final" order). Petitioner agrees to this alternative rationale.

8

### III. Once the Motions Panel Concedes that an Appeal of the Recusal Denial and Amendment Rejection Is Necessary, These Two Issues Can Be Submitted To A Merits Panel For Briefing.

Petitioner does not argue the merits of his recusal motion or the merits of amended Ground-20 in this petition or in the Motion to Recall Mandate, because the validity and strength of these arguments are not important where relief is limited to Petitioner's due process rights to appeal. When either the mandate is recalled or the appeal is rein-stituted by way of bifurcation, a briefing schedule should be published so the opposing parties can argue the underlying merits.

### IV. A Word About Jurisdiction

In Marshall v. Marshall, 547 U.S. 293, 298-99 (2006), the Supreme Court noted Chief Justice Marshall's famous caution: "It is most true that this Court will not take jurisdiction if it should not; but it is equally true, that it must take jurisdiction if it should...We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." This call to arms is not restricted to the Supreme Court. See Pierson v. Ray, 386 U.S. 547, 554 (1967)("It is a judge's duty to decide all cases within his jurisdiction that are brought before him...."); Willcox v. Consol. Gas Co. of N.Y., 212 U.S. 19, 40 (1909)("When a Federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction...."); Chicot County v. Sherwood, 148 U.S. 529, 534 (1983)("[T]he courts of the United States are bound to proceed to judgment and to afford redress to suitors before them in every case to which their jurisdiction extends."); Hyde v. Stone, 61 U.S. 170, 175 (1857)(same). Just as courts have an "absolute duty...to hear cases within their jurisdiction," United States v. Will, 449 U.S. 200, 215 (1980), litigants have a corresponding due process right to have their cases decided when they are properly before the courts.

9

By "relabeling" Petitioner's Motion to Recall Mandate and then directing the Clerk to "unfile" the motion and shut the door to the Court of Appeals, Judge Wilson is refusing jurisdiction that clearly belongs to the Court. Petitioner filed a proper notice of appeal based on his clear right to appeal the lower court's denial of recusal and denial of a matter of course amendment. These issues must be heard, and the recall motion or bifurcation motion provides the necessary mechanism for review.

## V. Conclusion:

Wherefore, Petitioner urges the Clerk to file this Petition for Review by the Court and assign it to a three-judge motions panel without delay. In turn, he asks the motions panel to find it proper to file the appended Motion to Recall Mandate and subsequently rule favorably on the issues presented therein. Finally, Petitioner requests that the motions panel direct the Clerk, as allowed under federal rules, to assign the actual appeal of the underlying issues to a merits panel.

Respectfully submitted, this 16th day of January, 2014,

Gregory C. Kapordelis, Pro Se
Fed. I.D. #63122-053
Marion U.S. Penitentiary
P.O. Box 1000
Marion, Illinois 62959

Appendix-A (attached): Motion to Recall Mandate

## CERTIFICATE OF SERVICE

Petitioner, Gregory C. Kapordelis, hereby certifies that he has mailed a copy of this Petition for Review by the Court, to AUSA Lawrence R. Sommerfeld, 75 Spring Street, S.W., Atlanta, Georgia, 30305, with sufficient postage for first-class delivery by U.S. Postal Service, on this day.

Certified, this 16th day of January, 2014,

_____

Gregory C. Kapordelis, Pro Se

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

GREGORY C. KAPORDELIS,          )
                                )
            Petitioner,          )
                                )
    v.                           )        APPEAL NO. 12-13456
                                )
UNITED STATES OF AMERICA,       )
                                )
            Respondent.          )        28 U.S.C. § 2255
                                )

## MOTION TO RECALL MANDATE

Now comes Petitioner, pursuant to Eleventh Circuit Rule 41-1,
to recall the mandate issued in <u>Kapordelis v. United States</u>, Appeal
No. 12-13456, District Court case numbers 1:12-cv-280 and 1:04-cr-249,
for reason of injustice. Specifically, Petitioner claims that the
instant Court failed to provide a briefing schedule for review of
the Motion to Recuse Judges Pannell and Brill (Doc. #546), or the
Motion to Amend Ground-20 (Doc. 558), both of which were denied only
by the magistrate court. (Doc. 557 and 561, respectively).

As court records reveal, objections to both denied orders
were timely filed (Doc. #560 and Doc. #565, respectively), but the
district court never ruled on the objections. It is unclear if the
Eleventh Circuit failed to announce a briefing schedule concerning
these non-dispositive "pre-trial" matters because of jurisdictional
problems, given the lack of district court intervention, or for some
other reason. What is clear, however, is that, according to the Federal
Rules of Procedure concerning 28 U.S.C. § 2255 petitions, a Motion to
Recuse is an appealable issue as a matter of right, and not discretion.
Also, the ability to amend once following a responsive pleading is a
matter of right, according to Federal Rules of Civil Procedure 15(a),
and this right should not be foreclosed by a magistrate alone.

This Motion to Recall the Mandate is timely, since it is filed within a year of the mandate's issuance. See 11th Cir. R. 41-1(c) (When a motion to recall a mandate is tendered for filing more than one year after issuance of the mandate, the clerk shall not accept the motion for filing unless the motion states with specificity why it was not filed sooner). Likewise, this Motion to Recall is proper, where it is to prevent the injustice of foreclosing an appeal of critical issues simply because a district court fails to follow federal rules of procedure or statutory law. See 11th Cir. R. 41-1(b)("A mandate once issued shall not be recalled except to prevent injustice"). Said another way, it would be manifestly unjust if Petitioner's appellate processes were thwarted simply because the district court judge failed to rule on objections to nondispositive orders issued by a magistrate judge, as required under 28 U.S.C. § 636 and Fed.R.Civ.P. 72(a).

**I. Petitioner Had A Right To Appeal The Magistrate's Order Denying Recusal And To Seek Review Of The Denial Of The Motion To Amend. These Rights Were Foreclosed By The District Judge's Refusal To Intervene When Objections Were Timely Filed As To The Magistrate's Non-dispositive Orders, Or By The Appellate Court Secondarily.**

**A. Relevant Facts:**

1. Petitioner timely filed a motion to recuse Judges Pannell and Brill under 28 U.S.C. §§ 144 and 455(a). This motion included a sworn affidavit which, together with the motion, identified myriad facts which exposed Judge Pannell's personal bias against Petitioner, and both Judge Pannell's and Judge Brill's personal bias in favor of the government. (Doc. 546).

2. Magistrate Brill denied Petitioner's Motion to Recuse in her September 20, 2011 order. (Doc. 557). Petitioner filed timely objections to this order, pursuant to 28 U.S.C.S. § 636(b)(1)(A), on September 29, 2011. (Doc. 560).

3. The Clerk of Court submitted the recusal motion, along with Petitioner's objections, to Judge Pannell on October 6, 2011. At no point, however, did Judge Pannell rule on these objections.

4. The government responded to the § 2255 petition on August 29, 2011. (Doc. 553). In that response, the court was invited to (i) merge all search warrant claims into one collective ground, and (ii) find that all search warrant claims were previously litigated.

5. Petitioner filed his Motion to Amend one of the search warrant grounds, specifically Ground-20, on September 14, 2011, based on prison mailbox rules. (Doc. 558). Attached to the motion was the amended version of Ground-20. In his argument explaining why an amendment was necessary, Petitioner made reference to both Fed.R.Civ.P. 15(a)(1) and 15(a)(2) to justify a favorable ruling, and stated:

> Upon review of the government's response, it is clear that the assistant U.S. attorney recognizes the merits of the individual claims, but seeks to foreclose review of those merits by conflating the various Grounds for relief and making it appear as if many of them are nothing more than "relitigation" of previously appealed issues....[I]n light of the Government's strategy, Movant finds it necessary—as a means to ensure justice—to amend/clarify Ground-20 so the habeas court will see it involves more than the same facts or legal rationale generated by the lower court and challenged on direct appeal. Indeed, as the amended Ground-20 reflects, it challenges the appellate court's factfinding (which in some cases conflicts with the lower court's factfinding) and the appellate court's new legal rationale for affirming the warrant. As the court will hopefully recognize, the amended version of Ground-20 is far more focused and concise, and should thwart the Government's attempt to render it nothing but an effort to relitigate matters that might have already been litigated.

(Doc. 558, pp. 1-2)(emphasis added).

6. Although the government filed no objections to Petitioner's Motion to Amend, Magistrate Brill denied the motion on October 7, 2011, Doc. 561, seemingly because Petitioner had filed too many pages in his § 2255 petition and, therefore, did not deserve further due process.

7. Petitioner filed objections to the magistrate's order denying

3

amendment of Ground-20, on October 25, 2011. (Doc. 565).  The district judge never intervened in this matter, although it is unclear if the Clerk of Court submitted the objections to Judge Pannell.

8. The magistrate court filed a Report and Recommendation denying relief on the § 2255 motion.  This R & R did not make mention of the Motion to Recuse or the Motion to Amend Ground-20. (Doc. 567).  Petitioner filed objections to the R & R in a timely fashion (Doc. 573), but the district court adopted the Magistrate's R & R wholesale on March 6, 2012. (Doc. 574).  Importantly, the court foreclosed a merit's review as to Ground-20 (the original version, not the amended version) by summarily concluding—as Petitioner feared when he sought to amend as a matter of right—that the claim had already been litigated on direct appeal.  The fact is, it is impossible to deem Ground-20 in any way procedurally barred due to "prior litigation" because the factual and legal predicates to the claims did not emerge until the appellate decision was published on June 1, 2009.  This fact  is irrefragable.

9. Petitioner filed a Motion to Amend or Alter Judgment, pursuant to Rule 59(e), on March 29, 2012. (Doc. 576).  This motion was granted on April 23, 2012. (Doc. 577).  A Notice of Appeal was filed on June 21, 2012 (Doc. 579), because it was unclear if subsequent motions to amend judgment would toll the time required to appeal.  In his notice, Petitioner made clear that he was appealing the district court's decisions "(i) to deny relief pursuant to § 2255, (ii) to deny recusal pursuant to 28 U.S.C. § 144 and § 455, (iii) to deny substantive amendments to the § 2255 petition which related-back to the initial claims in all respects...."

10. On August 2, 2012, Petitioner filed with the Eleventh Circuit a Motion to Bifurcate the Appeal "so that litigation on the Motion to Recuse Judges Pannell and Brill [] can proceed to panel review without

4

interruption by way of the COA process." (Motion, p. 1).   Petitioner's request was based on an assumption the magistrate's order became final when the district court ruled on the §2255 petition, but he warned the Court of Appeals that the district judge never ruled on the objections to the magistrate's order.   Petitioner also referenced the Advisory Committee Notes to argue that an appeal is a matter of right:

> As explained in the Notes of Advisory Committee on Rules concerning Rule 4 of § 2255, "A Movant is not without remedy if he feels [a judge's recusal is warranted to guarantee impartiality]...He can file an affidavit of bias. And there is the right to appellate review if the trial judge refuses to grant the motion." Judge Pannell's refusal to reverse (or even address) Judge Brill's order denying recusal equates with "the trial judge['s] refus[al] to grant [the] motion."

(Motion, p. 4).

11. A single-judge summarily denied a COA, but never mentioned the motion to recuse <u>or</u> the motion for the Court to bifurcate the appeal so that the recusal issue could be considered notwithstanding the decision as to COA.  Likewise, the Court never addressed the magistrate's denial of the motion to amend which lacked district court intervention.

12. In Petitioner's Motion for Reconsideration to the Eleventh Circuit, he clearly explained that the appeal of the motion to recuse must be heard, but to no avail. (Motion, p. 2).

13. Petitioner did not enumerate a failure to recuse or a failure to amend to  the Supreme Court on petition for writ of certiorari, because he naturally assumed that these topics were not jurisdictionally ripe even at the Eleventh Circuit, without the district court's inter-vention.  It was deemed prudent to proceed with the discretionary appeal on matters which appeared ripe (there was no guarantee that the Supreme Court would consider Question #1(A), which focused on Ground-20-Amended, since the motion to amend was denied only by the magistrate court), and to confront the Motion to Recuse and Motion to Amend afterwards.

## B. Legal Argument:

### 1. The District Court Must Rule On Objections To A Magistrate's Order On Nondispositive Matters, But Judge Pannell Failed To Do So.

As a matter of case management, a district judge can refer nondispositive motions, such as a motion to amend or a motion to recuse, to a magistrate judge for decision without the parties' consent. 28 U.S.C.S. § 636; Fed.R.Civ.P. 72(a). Under Rule 72(a), a party may object to the magistrate judge's order within 14-days of being served with a copy. Rule 72(a) also provides that the district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law. In this context, the U.S. Code and federal rules are unambiguous.

District Judge Pannell failed to honor either the statutory requirements of § 636 or the procedural requirements of Rule 72(a), where Petitioner filed timely objections to the magistrate's orders denying recusal and amendment, that were simply ignored. The question begged by Judge Pannell's failure to act is this: Does the magistrate's order denying relief become appealable to the Eleventh Circuit without the district court's intervention?

### 2. Petitioner Has A Non-Discretionary Right Under § 2255 To Appellate Review Of The Denial Of A Motion To Recuse

Pursuant to Rule 4, Petitioner has the right to appeal the denial of a motion to recuse judges who are adjudicating his §2255 petition, and he has every reason to exercise this right where (inter alia) his judges actually believe that legal, private, homosexual-sexual-conduct is more blameworthy (i.e., merits an increased prison sentence) than the crime of heterosexual child rape. Had Judge Pannell kept his bigoted and homophobic beliefs to himself, there would not necessarily

6

be a need for his recusal. But, he crossed the "I'm a mere bigot" line when he decided to increase Petitioner's term of imprisonment on this basis, and when he presented jurors with a blatantly false jury instruction which compelled them to believe that all of Petitioner's legal, gay, sexual activity was actually criminal conduct. And, Judge Brill crossed "the line" on this matter when she strained, during her review of Petitioner's motion to recuse, to excuse Judge Pannell on the basis that he never made any "discriminatory remarks" suggesting a homophobic bias or predisposition. Make no mistake, there was no need for Judge Pannell to say "I hate queers," in the wake of his decision to compare legal gay sex to the raping of a four-year old child, and in the wake of his decision to increase Petitioner's sentence despite having decreased the sentence of the comparison child rapist. To appreciate the gravity of this issue, see Appendix "A", pp. 30-38.

As explained in Iacullo v. United States, 463 Fed. Appx. 896, 897 (11th Cir. 2012), although the § 2255 litigant "was unable to obtain a certificate of appealability," he "could appeal the denial of his motion for reassignment [of the judge]" notwithstanding the COA denial. In short, it did not require a COA for a three-judge panel to review the denial of the motion to recuse, at least not in a case where the district court had reviewed the magistrate's order and complied with Rule 72(a) and § 636. When considering whether the recusal motion was moot, the Iacullo Panel concluded: "[I]acullo's recusal argument is not moot...[I]f we determine that [Judge] White should have recused himself, we can grant relief by reversing the district court's judgment and ordering that he not be assigned to White on remand." Id. at 898.

The Fifth Circuit weighed-in on this issue more conclusively in United States v. Carrol, 380 Fed. Appx. 456 (5th Cir. 2010), where it

acknowledged an earlier precedent: "We have previously held that a COA was not required to appeal the denial of a motion to recuse." (Citing Travino v. Johnson, 168 F.3d 173, 176-78 (5th Cir. 1999)).

The Eighth Circuit has also decided, through its holding in Nelson v. United States, 297 Fed. Appx. 563, 566 (8th Cir. 2008), that a petitioner "need not obtain a certificate of appealability to appeal [his motion to recuse] because it is separate from the merits of the § 2255 motion and did not preclude the district court from ruling on the merits." See also United States v. Falls, 242 F.3d 377 (8th Cir. 2000)(unpublished)(noting that this court summarily affirmed the denial of a recusal motion but denied the application for a certificate of appealability). Cf. Slack v. McDaniel, 529 U.S. 473, 484-85 (2000)(describing the circumstances in which a certificate of appealability should issue for a non-constitutional procedural issue when the procedural issue precluded the district court from reaching the merits of the underlying constitutional claims).

The position of the Eleventh, Fifth and Eighth Circuits, even if not binding in authority, is consistent with Rule 4 of § 2255, which establishes authority to appeal the denial of a motion to recuse as a matter or right, and not discretion. Because Petitioner was not permitted to appeal the denial of his recusal motion, his right to due process was violated, whether due to the district court's inaction or the appellate court's inadvertence. Immediate relief is justified.

Although the validity of the recusal motion itself is not the subject of this motion—where the injustice to be relieved focuses only on the appeal rights which were eviscerated—the merits of the recusal motion justify relief instanter: No § 2255 petitioner who has engaged in legal, private, homosexual-sexual-conduct, should have the

constitutionality of his conviction and sentence assessed by a person who believes that one should be imprisoned longer for such activities. Indeed, Judge Pannell's conduct during the § 2255 proceedings, wherein he simply ignored claims altogether rather than address their merits and provide the necessary relief, proves his inability to fairly or justly consider matters related to Petitioner.

**2. Petitioner Should Be Allowed To Appeal The Magistrate Judge's Denial Of The Motion To Amend Ground-20, Where There Was No Legitimate Basis To Deny This "Matter Of Course" Request.**

Although the merits of the claims underlying the amended version of Ground-20 are, likewise, not the subject of this motion—where the injustice to be relieved focuses on the fact that the magistrate court denied the amendment without cause and without review—the validity of the Fourth Amendment claim is undeniable. (See Appendix "A", pp. 4-12, for the argument prematurely presented to the Supreme Court).

For purposes of recalling the mandate, the Eleventh Circuit need only recognize that Fed.R.Civ.P. 15(a)(1) allows a party to amend once as a matter of course "if the pleading is one to which a responsive pleading is required, 21-days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earliest." Because the district court did not intervene based on Petitioner's objections to the magistrate's order denying permission to amend, Petitioner's right to seek appellate review of the denial was thwarted. Indeed, even if Petitioner had to rely on Rule 15(a)(2)—which instructs that "the Court should freely give leave [to amend] when justice so requires"—it would have been an abuse of discretion to deny a timely amendment simply because Petitioner had somehow filed too many pages by that time. Nowhere in the federal rules of procedure, or the statutes governing § 2255, is there a

9

provision which forecloses an amendment if "too many pages" are filed in a petition for relief, and nowhere did the magistrate suggest that the amended claims did not "relate back" or were futile.

In the end, it is clear that the motivation for the magistrate's denial was her determination to declare Ground-20 procedurally defaulted based on prior litigation—something she could not have done if the amendment was granted.    As such, the denial was in no way "in the interest of justice."  Had there been review of the magistrate's denial, as required by law and rule, the amendment would have been granted and the merits of Ground-20 would have been evaluated.

**3. The Eleventh Circuit Has Yet To Decide Whether The Final Order In A Section 2255 Petition Serves As An Order Overruling All Rule 72(a) Objections Which Are Pending.**

Based on the arguments presented thus far, it is clear the Eleventh Circuit must recall the mandate in order to conduct appellate review of the recusal motion, and to allow an opportunity to seek appellate review of magistrate's denial of the amendment.  Following the recall, two options emerge: (i) reinstate the appeal, or (ii) remand the case to the district court so the district judge can rule on the pending objections.  To choose the proper option, the Eleventh Circuit must first consider a matter of first impression: Whether a final order in a § 2255 petition serves as an order overruling all Rule 72(a) objections that are pending, or whether federal rules require the district court's intervention each and every time a magistrate's nondispositive order is properly objected to.

The Second Circuit tackled this question in <u>Fielding v. Tollaksen,</u> <u>et al.</u>, 510 F.3d 175 (2007), in the context of a motion to amend a 42 U.S.C.S. § 1983 complaint, and held that:

> [W]hen a district judge enters an order disposing of a case
> without expressly ruling on a pending objection filed pursuant
> to Federal Rule of Civil Procedure 72(a), the judgment entered
> pursuant to that order functions as a final order overruling
> the objection.

Fielding, 510 F.3d at 179. Specifically, the Second Circuit conclu-

ded that it had jurisdiction to consider the magistrate judge's

order denying relief. To arrive at this precedential holding, the

Fielding Panel agreed with the reasoning in several other decisions

that a district court's entry of judgment without ruling on a motion

or argument "is tantamount to an denial or rejection of that motion

or argument." Id. at 178. See, e.g., Alpine View Co. v. Atlas Copco AB,

205 F.3d 208, 220 (5th Cir. 2000)(interpreting "lack of an explicit

statement" on Rule 72(a) objections as "refusal to overrule the

magistrate judge's order"); Miller v. Auto Club of New Mexico, Inc.,

420 F.3d 1098, 1118 (10th Cir. 2005)("Given the court's denial of

[plaintiff's] motion for sanctions in conjunctions with its subsequent

order granting [defendant] summary judgment on a number of the claims

implicated by her discovery requests, we conclude the district court's

silence on [plaintiff's] motion was a conscious and implicit denial

of her discovery requests and a refusal to overrule the magistrate

judge's order."); Hill v. SmithKline Beecham Corp., 393 F.3d 1111,

1116 (10th Cir. 2004)(concluding that "the district court's failure

to address [a party's] arguments may be properly construed as an

implicit denial of those arguments"); see also 15A Charles Alan Wright,

Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure

§ 3905.1, at 250 (2d ed. 1992)(noting the "general rule that appeal

from a final judgment opens the record and permits review of all

rulings that led up to the judgment").

The Eleventh Circuit came very close to adopting a rule consis-

tent with the Second, Fifth and Tenth Circuits, when it decided

Muhammad v. Sapp, 494 Fed. Appx. 953 (11th Cir. 2012), an unpublished

decision not available to Petitioner when he filed his Notice of

Appeal or Notice to Bifurcate Appeal. [Note: Muhammad was decided

in November, 2012, but appellate decisions are not made available to

inmates by way of LEXIS for approximately three months]. In Muhammad,

the three-judge merits panel, in the context of a 42 U.S.C.S. 2000cc

complaint, considered whether "the district court erred by refusing

to rule on Rule 72(a) objections to a magistrate's discovery order."

After noting that "when a party objects to a magistrate's nondispositive

order, the district court 'must consider timely objections and modify

or set aside any part of the order that it clearly contrary to law,'"

the panel applied an abuse of discretion standard, and concluded:

> Here, even if we assume that the district court erred by
> failing to consider the merits of Muhammad's Rule 72(a)
> objections to the magistrate's discovery order, we still
> conclude the error was harmless. First, Muhammad has failed
> to show the district court's omissions resulted in substantial
> harm to his case. Second, because the entry of a final judg-
> ment constituted an implicit denial of those objections, he
> could have obtained appellate review. However, Muhammad con-
> ceded he is not actually challenging the magistrate's ruling;
> therefore, any issues in this respect are moot.

Muhammad, 494 Fed. Appx., at 958-59 (internal citations omitted; empha-

sis added). Clearly, the question remains open after Muhammad.

Contrary to the promise in Muhammad that "an implicit denial"

opens a door to appeal, Petitioner was not allowed to pursue any appeal

of the denial of the motion to recuse. Thus, either the Eleventh

Circuit had rejected the Muhammad holding in Petitioner's case, or had

inadvertently thwarted the appeal and Petitioner's due process rights.

The time has come for the Eleventh Circuit to finally determine,

through a precedential holding that binds process, whether a final

order by a district court judge renders pending objections, in nondis-

positive matters decided by a magistrate judge, overruled as a matter

of law.  Petitioner's notice of appeal compels that something be

done.  To be sure, justice served late is better than no justice at all.

## II. The Mandate In Petitioner's Section 2255 Proceeding Should Be Recalled, And The Appeal Reinstated, To Permit The Court To Determine, Once And For All, Whether A District Court's Final Order In A Civil Proceeding (Or, More Narrowly, A § 2255 Petition) Renders Pending Objections Under Rule 72(a) Overruled. After This Determination, The Court Can Either Permit A Proper Appeal To Continue Or Remand The Case So The District Court Can Rule On Pending Objections And An Appeal May Follow.

Petitioner cannot be blamed for his inability to appeal the denial

of his Motion to Recuse, or for his inability to seek permission to

appeal the denial of the Motion to Amend Ground-20 as a matter of right.

To be sure, he provided proper notice to the Eleventh Circuit, and

begged the Court on several occasions to take note of these important

issues.

Initially, Petitioner thought that a petition for mandamus relief

was the most appropriate vehicle to accomplish the objectives outlined

in this brief, but the Mahammad decision makes it clear that the

insult to a legitimate appellate review may not rest with Judge Pannell.

It is entirely possible that Judge Pannell just assumed that his final

order denying relief in the § 2255 motion rendered the pending objections

moot automatically.  This would explain his recent order denying Peti-

tioner's request to finally rule on the pending motions so that a new

Notice of Appeal can be filed. (See Docs. #599, #600, #601).  Moreover,

mandamus relief is available "only in drastic situations, when no other

adequate means are available to remedy a clear usurpation of power or

abuse of discretion," Jackson v. Motel 6 Multipurpose, Inc., 130 F.3d

999, 1004 (11th Cir. 1997), and may not "be used as a substitute for

appeal, or to control a decision of the trial court in discretionary

matters." Id. (Quotation marks and citations omitted).  In short, it is

not all that clear if Judge Pannell thwarted Petitioner's appeal by way of his refusal to act, or whether the appellate court thwarted the appeal through inadvertence. As such, a motion to recall the mandate seems to be the only reasonable way to provide a proper forum to ensure that Petitioner's procedural due process rights are protected.

### III. Conclusion:

Wherefore, based on the preceeding arguments as to fact and law, Petitioner moves the Honorable Court to recall its mandate in <u>Kapordelis v. United States</u> and reinstate the appeal, and to subsequently determine whether (i) Petitioner will be allowed to properly appeal the denial of the Motion to Recuse and seek an appeal of the denial of the Motion to Amend, or (ii) the § 2255 judgment must be vacated and the case remanded, for a ruling by the district court on the objections.

Respectfully submitted, this $\underline{15}$th day of November, 2013,

Gregory C. Kapordelis, Pro Se
Fed. I.D. #63122-053
Marion U.S. Penitentiary
P.O. Box 1000
Marion, Illinois  62959


### CERTIFICATE OF SERVICE

Petitioner, Gregory C. Kapordelis, hereby certifies that he has mailed a copy of this Motion to Recall Mandate to the U.S. Attorney's Office, 75 Spring Street, S.W., Atlanta, Georgia  30303, in an envelope with sufficient postage for first-class delivery via U.S. Mail, by giving the envelope to Marion Prison mailroom staff on this date.

(Signature found at next certification)

14

## CERTIFICATE OF INTERESTED PARTIES

Petitioner certifies that there are no new parties of interest to add at this time, and he stands by the notice previously given to the Eleventh Circuit.

Certified, this _15_ th day of November, 2013,

Gregory C. Kapordelis, Pro Se

# APPENDIX A

## II. FACTS AND LEGAL ARGUMENT CONCERNING SEARCH WARRANT CLAIM

Question 1(A)·in this petition concerns one claim presented in both Question-4 of the motion for COA (Doc. 588) and Ground-20 (Amended) of the § 2255 motion (Doc. 558).

Specifically, Petitioner has limited his argument to a purely legal issue:  Did the Eleventh Circuit, during direct appeal, arrive at a novel and unvetted legal decision which is contrary to, or involves an unreasonable application of, Supreme Court precedent, where it affirmed the search of Petitioner's home based on a diluted Fourth Amendment standard that embraces mere suspicion of criminal conduct (i.e., "a reasonable basis for concluding that [Petitioner] could be engaged in sex tourism"), rather than probable cause of criminal conduct (i.e., a reasonable basis/ground for concluding that Petitioner has engaged or is engaged in sex tourism)?

Petitioner contends that the Eleventh Circuit panel vitiated the Fourth Amendment's Warrant Clause by equating **the probability of**

---

[3] The second judge was Circuit Court Judge Tjoflat, who (i) served on the panel during direct appeal, i.e., the panel being criticized in this petition for (a) overreaching with respect to the Fourth Amendment issue, and (b) adopting the government's unsupported premise of invited error to foreclose review of the failure-to-properly-caution claim; (ii) was named as a defendant in Petitioner's Bivens action (Case No. 11-cv-1789) seeking declaratory relief for abuse of judicial process; and (iii) was the subject of Petitioner's Judicial Complaint (No. 11109161) alleging pervasive bias.

<u>criminal conduct</u> with <u>the probability of a possibility of criminal
conduct</u>.

### Relevant Facts Presented Below

1. The search warrant application in this case alleged two crimes
on its face:  a violation of 18 U.S.C. § 2252(a)/ 2252A, i.e., child
pornography production, possession, receipt or distribution; and, a
violation of 18 U.S.C. § 2423(b), i.e., travel in foreign commerce with
the intent to engage in illicit sex abroad ("sex tourism").

2. The search warrant affidavit, however, only presented
unreliable allegations of sexual molestation supposedly emanating from
three juveniles in St. Petersburg, Russia.  More to the point, there
was no information post-<u>Franks</u>[4] indicating that Petitioner ever
possessed, produced, received, distributed, or dreamed of child
pornography in his lifetime; or that Petitioner ever planned or
arranged — from the United States or his home in Georgia — to engage
in illicit sexual acts abroad.

3.  During litigation of Petitioner's motion to suppress evidence
of child pornography found as a result of the search, the trial court
never once asserted that there was any post-<u>Franks</u> evidence of sex
tourism (i.e., travel with illicit intent), and it expressly concluded
that the affiant's allegations of child pornography crimes were
unfounded (Doc. 165 p. 63):

> Defendant argues that while the affidavit includes many "boiler
> plate" paragraphs about the characteristics of child
> pornographers, there was no evidence of, or basis to believe
> that, defendant had ever possessed child pornography.
> Defendant's argument is not without merit.  It would have made
> more sense for the affiant to expound on the characteristics of
> child molesters rather than those of child pornographers.
> However, a magistrate judge taking a practical common sense
> approach could conclude that there is a link between child

---

[4] <u>Franks v. Delaware</u>, 438 U.S. 154 (1978)(calling for redaction from the search
warrant affidavit of all arguably false or misleading information).

molestation and child pornography and that one who molests
children would be inclined to possess child pornography.

It is important to note that Petitioner's trial judge recently
renounced his "common sense" position.[5]

4.  In the end, the district court validated the search of
Petitioner's home on the basis of the aforementioned (and now
fallacious) inference, even though there was no such link presented on
the four-corners of the affidavit.  As an alternate basis to validate
the search, the district court observed that the warrant also sought
evidence of legal travel activities which was known to exist on a
laptop computer which had already been seized in New York four-hours
earlier:

> [T]he magistrate judge could have found a link between the
> molestation and child pornography in defendant's home. Moreover,
> . . . [u]nder the circumstances of this case, pictures of
> defendant hugging, or engaging in non-sexual physical contact
> with unrelated children, such as those observed by Russian
> police on defendant's laptop computer in Russia, and evidence of
> defendant's travels to Russia, were encompassed in the
> description of items to be seized in the search warrant.  If
> nothing else, there was sufficient probable cause to believe
> that such items would be found in defendant's home. (Doc. 165,
> p. 66).

Indeed, the above referenced photographs depicted above-board events
at the orphanage where Petitioner was processing an adoption which
had been approved by Homeland Security, and they clearly
corroborated the legitimate purpose of Petitioner's visits to
Russia.  Again, not once did the trial court conclude that there
existed any evidence pertaining to travel with illicit intent (as
opposed to evidence proving lawful adoption-related conduct in

---

[5] See United States v. Skow, 2012 U.S. Dist. LEXIS 142091 (N.D.Ga. October 1,
2012)(adopting the magistrate's R & R which concluded that (i) there was no
evidence within or outside the affidavit suggesting that Defendant Skow possessed
or collected child pornography, and (ii) it is an "inferential fallacy" to assume
that "persons who have a certain sexual attraction [to children] often collect or
maintain pornography in their homes").

Russia). And, more important to the probable cause calculus, it was illogical to validate the search based on the premise that evidence alleged to exist <u>only</u> on a laptop computer located in New York would be found 700-miles away in Gainesville, Georgia.

5. On direct appeal, Petitioner's attorney challenged the district court's factual findings and legal rationales. These arguments obviously resonated with the Eleventh Circuit panel, because it affirmed the search based on a novel and unvetted fact, and on a novel, unvetted and unreasonable legal theory:

> [W]e conclude that there was probable cause to support the issuance of a search warrant for Kapordelis's home. The evidence presented by the affiant, once edited under Franks, was sufficient to provide **a reasonable basis for concluding that Defendant could be engaged in sex tourism** and that Defendant would reasonably keep evidence of such activities, including sexual explicit images of children, in his home, a place where one might ordinarily orchestrate travel, keep information about one's travel, and make plans for activities—whether legal or illegal—while on a trip. (Kapordelis, 569 F.3d at 1311)(emphasis added).

To be clear, there was not (as the district court tacitly concluded during litigation below) any indication of evidence suggesting that Petitioner arranged or planned any illicit travel, much less that he planned or arranged this conduct while in the United States or at his Georgia home. This explains the panel's use of phrases like, "[The] home, a place where one <u>might</u> <u>ordinarily</u> orchestrate travel," and "make plans for activities—whether <u>legal</u> or <u>illegal</u>—while on a trip," <u>Id</u>. Needless to say, in the absence of evidence indicating travel with illicit intent (i.e., sex tourism), a warrant cannot be authorized to search through speculative evidence of <u>legal</u> travel just to see if, by chance, speculative evidence of <u>illicit</u> intent to travel might possibly exist.

6. In terms of the allegations of molestation attributed to three Russian juveniles, allegations which should have been redacted under

7

<u>Franks</u> as "arguably false or misleading," the appellate panel only
fleetingly referred to "the facts <u>which</u> <u>suggested</u> that [Petitioner]
met and engaged in sexual activities with young boys [in Russia]."
<u>Kapordelis</u>, 569 F.3d at 1312.  Not once, however, did the panel state
that there was probable cause to believe the molestations took place,
and a conclusory reference to unidentified facts "which suggested"
molestation falls far short of this standard.[6]

7. In his § 2255 motion, Petitioner presented his Fourth
Amendment claim through three distinct arguments, all addressed in
Question-4 of the motion for COA (Grounds 2 and 20 of the § 2255
motion).  The district court declined to review the merits of these
claims, deeming them barred as "prior litigation."  (App. "E", pp. 11,
20).  The district court also rejected Petitioner's amended version of
Ground-20 (Doc. 558), even though it complied with Fed.R.Civ.P.
15(a)(1)(B) <u>and</u> "related back" to the original Ground-20 in all
material respects.  Importantly, the instant petition only concerns
Ground-20 and Ground-20 (Amended), and not Ground-2, because it
focuses exclusively on <u>the appellate panel's</u> novel fact-finding and
novel legal rationale, i.e., two issues which cannot be deemed prior
litigation in any sense because they emerged <u>after</u> the June 1, 2009
decision was published.

<u>Legal Argument Presented Below</u>

1.  <u>The Fact of a Constitutional Violation is Debatable Among Jurists of
Reason</u>.

When distilled, Petitioner's constitutional claim revolves around a
simple question: Is the probability of a fact the same thing as the
probability of a possibility of a fact?  More to the point: Is the
probability that a crime <u>has</u> <u>been</u> committed (or <u>is</u> <u>being</u> committing) the

---

[6] See <u>Merriam-Webster's Collegiate Dictionary</u>, Eleventh Edition, listing "to hint"
or "to insinuate" as synonyms for "suggest."

8

same thing as the probability that a crime could have been, might have been, or may have been committed?  This question is far from nuance, because the answer determines whether the Eleventh Circuit's novel standard honors the Fourth Amendment's Warrant Clause or renders it wholly illusory.  Petitioner contends that, as a matter of logic alone, the targeted "fact" reached in the Eleventh Circuit's probable cause calculus adopts mere suspicion of a crime as a sufficient burden to justify a search of a citizen's home, and he seeks relief under 28 U.S.C. § 2255 based on legal innocence.  While simple, Petitioner's argument is multifaceted.

First, it is important to acknowledge what "probable cause" actually means.  The Supreme Court recently reviewed this issue in Safford v. Redding, 174 L.Ed.2d 354, 361 (2009), where it defined the longstanding probable cause burden to search a home as when:

> "[T]he facts and circumstances within [an officer's] knowledge and of which [he] has reasonable trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed," Brinegar v. United States, 338 U.S. 160, 175-76 (1949)(emphasis added), and that evidence bearing on that offense will be found in the place to be searched.

Accordingly, the specific fact for which there must be a reasonable basis of information is whether an offense "has been or is being committed," not whether it could have, might have, or may have been.  The panel's finding of "a reasonable basis for concluding that [Petitioner] could be engaged in sex tourism" is transparently substandard.

In Zurcher v. Stanford Daily, the Supreme Court clearly explained that there could be no search unless and until one established probable cause (i.e., a reasonable basis to believe) that a crime has been committed:

> [O]nce it is established that probable cause exists to believe a federal crime has been committed, [then] a warrant may issue.

Zurcher v. Stanford Daily, 436 U.S. 547, 561 (1978)(emphasis added).  Again, finding a reasonable basis for concluding (i.e. probable cause to believe)

9

that Petitioner has engaged in the crime of sex tourism involves a higher hurdle than finding "a reasonable basis for concluding that [Petitioner] could be engaged" in the crime of sex tourism. Thus, the Eleventh Circuit's decision clearly involves an unreasonable application of Zurcher.

Second, it is important to identify how the Supreme Court defines reasonable suspicion, a burden clearly inferior to probable cause. Toward this effort, we need look no further than Terry v. Ohio, 392 U.S. 1 (1968), where the Court equates reasonable suspicion to conduct a "pat down" frisk with a reasonable basis to believe that criminal conduct "may be afoot." The words "may be" are critical to the instant analysis because Merriam Webster's Collegiate Dictionary, Eleventh Edition, equates "could" with "might," and assigns to each less probability than "may." In short, logic alone dictates that the Eleventh Circuit's decision (a decision which included a finding that Petitioner "could be engaged" in criminal conduct) is predicated on a standard which is inferior even to reasonable suspicion, because the probability that a person could be engaged in criminal conduct is, according to Merriam-Webster's, less than the probability that criminal conduct may be afoot.

Needless to say, "reasonable suspicion" is not (and never has been) credibly equated with probable cause, and reasonable suspicion will not support the search of a person's home but in exceptional circumstances. See United States v. Knights, 534 U.S. 112 (2001)(embracing reasonable suspicion as sufficient to search the home of a probationer); Safford v. Redding, 174 L.Ed.2d 354 (2009)(acknowledging a reduced expectation of privacy with regard to a minor student searched at school); United States v. Cotterman, 637 F.3d 1068 (9th Cir. 2010)(finding reasonable suspicion adequate for a search at the extended border). No recognized exception applies in Petitioner's circumstances.

10

Petitioner contends that a reasonable jurist would debate whether the Eleventh Circuit targeted a substandard fact upon which to base its probable cause finding, and whether Petitioner therefore suffered a Fourth Amendment violation through a perverse application of the Warrant Clause.[7]

## 2. The Correctness of the District Court's Procedural Ruling is Debatable Among Jurists of Reason.

With respect to the asserted procedural bar, i.e., the notion of prior litigation sufficient to foreclose analysis on the merits, Petitioner argues that § 2255 review is justified for two reasons.

First, this claim could not have been previously litigated because it first emerged when the Eleventh Circuit's decision was published. To be clear, the trial court founded its decision to validate the search on a completely different legal rational. Murray v. Carrier, 477 U.S. 478 (1986)("cause" under the "cause and prejudice" rule would be established by a showing that "the factual or legal basis for a claim was not reasonably available" when the appeal was filed). It was the appellate panel, however, that first pronounced a reasonable suspicion of sex tourism, not the lower court. Likewise, it was the appellate court, not the lower court, that spawned the legal conclusion which is being challenged. As such, this novel fact and novel legal rationale were not available in time for the appeal and are ripe for review under § 2255.

Second, 28 U.S.C. § 2254(d) invites collateral review if the panel's decision is contrary to, or involves an unreasonable application of, Supreme Court precedent (See §2254(d)(1)), or if material facts are unreasonably determined based on the record as a

---

[7] As a member of the appellate panel on direct appeal, i.e., the panel being accused of overreaching under the Fourth Amendment, Judge Tjoflat would understandably prefer that his novel standard not be vetted under § 2255.

11

whole (See § 2254(d)(2)).  Here, there is no basis in the record to assert a "reasonable suspicion" of sex tourism (where there was no more than an inchoate suspicion or hunch of sex tourism), and the appellate court's novel legal rationale clearly conflicts with at least three Supreme Court precedents.

In sum, Petitioner contends that the correctness of the district court's procedural ruling foreclosing review is debatable among jurists of reason and justifies further review of Petitioner's claims on their merits.

## IV. FACTS AND LEGAL ARGUMENT CONCERNING UNLAWFUL UPWARD VARIANCE

Question 1(C) in this petition for writ of certiorari concerns the appellate-IAC claim addressed in Question 9(C) of the Motion for COA and Ground-16 of the § 2255 motion (Docs. 588 and 536, respectively), where counsel is faulted for failing to enumerate the preserved claim addressed in Question-3 of the Motion for COA and Ground-9 of the § 2255 motion.

Specifically, appellate counsel is accused of deficient performance for failing to enumerate a claim of error challenging -- as a Fifth Amendment substantive due process violation -- the sentencing court's decision to substantially upwardly vary the term of imprisonment based on the fact of Petitioner's legal, private, homosexual-sexual-activity in Prague.  When distilled, this question simply asks whether a court of law can use the statutory sentencing factor found at 18 U.S.C. § 3553(a)(6) or § 3553(a)(1) to punish conduct the Supreme Court has deemed constitutionally protected. Petitioner contends that it is constitutionally offensive to assess additional prison time based on his legal homosexual-sexual-conduct in Prague, where such an outcome (1) involves a contrary application of Bordenkircher v. Hayes, 434 U.S. 357, 363 (1978)(it is a due process violation "of the most basic sort" to punish a person because he has done what the law plainly allows him to do); (2) involves an unreasonable application of Lawrence v. Texas, 156 L.Ed.2d 508 (2003)(deeming punishment of such conduct as a crime, by as much as a

30

> **Defense Attorney**: Then I think you ought to add legal sexual encounters in Prague.
>
> **The Court**: No. I'm not going to say they were legal. I don't know whether they were legal or not.

The record shows that the only evidence of prostitution involved this 18-year old. This conduct, like the non-commercial conduct involving persons under the age of 18 but over the age of legal consent, violated no laws. The sentencing court had an obligation to either know the law or refrain from allowing the court's ignorance to prejudice the sentence.

3. During his parity analysis, pursuant to 18 U.S.C. § 3553(a)(6), the sentencing judge compared Petitioner's legal gay sex in Prague to the crime of toddler rape, and somehow found the legal gay sex more condemnable from a sentencing point of view:

> **The Court**: Well, the court is going to grant the government's motion for an upward departure. . . [I] have sentenced defendants in this court ten years for simply crossing state lines one time on the fault that they were getting ready to have sexual adventures with children, and I believe those sentences generally average around ten years. And I know I may be confusing some of them with just downloading child pornography, which gets up in the number of years close to ten. But if those sentences are, or those crimes are worth ten years, then this offense is worth much more than what the guideline calculation comes up with. (Sent.Tr., p. 321).
>
> **The Court**: I have touched on parity with other sentences I have imposed on defendants who travel in interstate commerce to have sex with a child for one time have received sentences of ten years or more. [Kapordelis] was very conscious of what he was doing was wrong. He checked on the laws of various countries over and over to make sure of that, or tried to figure out that he was -- would be, quote, legal. (Sent.Tr., p. 322).

The following points are critical: <u>First</u>, Petitioner was never charged with, or involved in, sexual conduct with children. <u>Second</u>, the parity analysis under § 3553(a)(6) requires a comparison between

"similarly situated defendants who commit similar crimes," not a comparison between a defendant's legal homosexual activities and another defendant's heterosexual crimes against toddlers.  <u>Third</u>, the conclusion that legal, private, homosexual-sexual-conduct is more blameworthy than child rape reflects either unbridled homophobia or irrational thinking.  <u>Fourth</u>, it is nonsensical for a court to increase the sentence further just because the defendant checked on the laws "over and over" to make sure he did nothing illegal during foreign travel.

4. In the end, the sentencing court varied substantially upward from a guideline recommendation of 262-327 months' imprisonment, and assessed a term of 420-months' confinement, a $20,000.00 fine, and 6-years of supervised release.  Petitioner's legal gay sex in Prague was a major factor in this variance, and it also foreclosed mitigation.

5. On direct appeal, Petitioner's attorney challenged the parity analysis (App.Br., pp. 50-53), but he failed to argue that any increase in the term of imprisonment based on the Prague conduct manifests a substantive due process violation and conflicts with the objectives codified at 18 U.S.C. § 3553(a)(2).  Consequently, the appellate panel never addressed these critical issues, although it noted the sentencing court's failure to adequately conduct a parity analysis (without providing its own repair).[17]

6. Rather than rebuke the sentencing court's decision to use the Prague conduct as a basis for enhancing the sentence under § 3553(a)(6), the appellate panel exacerbated the constitutional harm by upwardly varying even more on the same basis, under § 3553(a)(1):

---

[17] <u>See Kapordelis</u>, 569 F.3d at 1318 ("Kapordelis is correct that the district court failed to articulate why his guideline range of 262-327 months' imprisonment was disproportionately low compared to the 135-month sentence in <u>Scott</u>, and did not cite to cases involving the production of child pornography in which the defendant received shorter sentences.")

> Further, the district court's finding that Kapordelis had a
> history of abuse is further supported by the fact that [],
> **although it may have been legal activity in the Czech Republic,**
> Kapordelis's main objective while in Prague was to have sex
> with boys under the age of eighteen. *Kapordelis*, 569 F.3d at
> 1318 (emphasis added).

The following points are critical: **First**, Petitioner's conduct was
lawful according to both Czech Republic and U.S. law. **Second**, it is
legally irrelevant -- for purposes of increasing a term of
imprisonment -- whether a person's main objective was to have sex with
males under the age of eighteen, as long as they were over the age of
legal consent and the conduct was consensual, which was the case here.
The 404(b) sexual activity with males under the age of 18 did not
involve pornography or prostitution, and this is why the age of
eighteen is irrelevant.

7. Although the appellate panel clearly erred legally (supra), it
also clearly erred factually when stating that Petitioner "had
engage[d] in sexual trysts with underage boys in Prague . . .,"
*Kapordelis*, 569 F.3d at 1313, and "conceded that he engaged in sexual
acts with minors while he was in Prague." Id.  The record irrefutably
establishes that (i) no illicit sexual activities took place in
Prague, and (ii) Petitioner made no such concessions and insisted that
his conduct in Prague was lawful.  Indeed, these assertions by the
panel are belied by its admission (see Bullet #6) that the conduct in
Prague "may have been legal . . . ."

8. Although Petitioner alleged in Ground-16 of his § 2255 motion
that his trial and appellate attorney (i.e., Mr. Don Samuel) was
ineffective for not objecting at trial and not enumerating a claim
regarding this issue on appeal, the district court applauded Mr.
Samuel's trial performance yet completely ignored the appellate-IAC
claim (App. "E", pp. 23-27):

34

The record makes clear that Mr. Samuel vigorously objected to any implication that Kapordelis engaged in illegal sexual conduct in the Czech Republic or that his legal conduct in Prague should be used against him.

9. In Question-3 of the motion for COA, Petitioner adopted the district court's applause of Mr. Samuel's trial performance as a concession of preserved error, but continued to fault Mr. Samuel for his failure to enumerate this constitutional claim on appeal. In addition, Petitioner argued that "cause and prejudice" justified § 2255 review for reasons above and beyond the appellate-IAC claim. The district court provided no analysis on the merits of Petitioner's claim during either the § 2255 process or the COA process. The appellate court likewise summarily foreclosed an opportunity to appeal.

<u>Legal Arguments Presented Below</u>

Petitioner presents two distinct arguments to establish the fact of appellate-IAC, where the attorney failed to enumerate on appeal a "slam dunk" (and preserved) claim alleging that the sentence was increased based on constitutionally protected conduct, i.e., legal, private, homosexual-sexual-conduct (<u>sans</u> pornography) which took place in Prague between 1998 and 2001. Because no objectively reasonable attorney would fail to argue such an important issue, and because the outcome of appeal would have been different had the issue been advanced, appellate-IAC is manifest under <u>Strickland v. Washington</u> (<u>supra</u>).

1. <u>The Sentence Involves An Unreasonable Or Contrary Application Of Supreme Court Precedents, And Must Be Vacated</u>

In <u>Lawrence v. Texas</u>, 156 L.Ed.2d 508 (2003), the Supreme Court held that it violates substantive due process rights to criminalize (i.e., to punish as a crime) consensual, private, homosexual-sexual-

35

conduct between adults.  In the instant case, the district court and appellate court seek to execute an end-run around Lawrence through which this protected conduct can be punished by way of an upward variance under 18 U.S.C. § 3553(a)(6) and § 3553(a)(1).  Indeed, if the issue at hand involved an increased prison sentence predicated on race, as opposed to lawful, private homosexual-sexual-conduct, there surely would have been no attempt to enhance the prison sentence by perverting judicial process, as this bias was bridled long ago.

Similarly, the Supreme Court's decision in Bordenkircher v. Hayes, 434 U.S. 357 (1978), establishes, this time squarely, that a prison sentence which is increased based on legal gay sex violates Fifth Amendment rights, where the Court held that "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort."  Id. at 363; See also United States v. Goodwin, 457 U.S. 368, 372 (1982)(same).

In sum, it is certainly debatable whether Petitioner's appellate counsel was constitutionally ineffective for failing to enumerate this Fifth Amendment claim on appeal, where the sentence would have been substantially less harsh had it not been prejudiced by consideration of constitutionally protected conduct through two sentencing statutes.

## 2. The Sentence Squarely Conflicts With 18 U.S.C. § 3553(a)(2)

Petitioner argues that it violates the objectives codified at 18 U.S.C. § 3553(a)(2) to upwardly vary a prison sentence based on constitutionally protected conduct.  Had the guidelines been mandatory, Rule 1B1.4 would have specifically prohibited a departure for any conduct "otherwise protected by law."  Under the advisory scheme post-Booker, a sentence must be no shorter or longer than necessary to accomplish the objectives under § 3553(a)(2), and punishing legal gay sex fails to meet those objectives.

36

First, § 3553(a)(2)(A) involves three sub-factors: the sentence must reflect the seriousness of the offense, []promote respect for the law, and [] provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). Where the first and last sub-factor are offense specific, it is important to note that Petitioner's sexual conduct in Prague (i.e., the 404(b) evidence) had nothing to do with child pornography (or any pornography, for that matter). As such, an upward variance does not further these two objectives. Likewise, it is obvious that any prison time based on a person's decision to follow the law can, in no rational way, "promote respect for the law."

Second, § 3553(a)(2)(B) requires that a sentence "afford adequate deterrence **to criminal conduct**." 18 U.S.C. § 3553(a)(2)(B). Clearly, there is no legitimate reason for a court of law to deter legal, private, homosexual-sexual-conduct in the United States of America.

Third, § 3553(a)(2)(C) concerns "the need for the sentence imposed . . . to protect the public **from further crimes** of the defendant." 18 U.S.C. § 3553(a)(2)(C). Once again, Petitioner's legal homosexual sexual conduct in Prague involved no criminal conduct at all, so punishing these legal acts does not thwart further crimes.

In sum, none of the objectives outlined under § 3553(a)(2) would be advanced by an increased term of imprisonment based on legal, gay sex. As such, any sentence enhanced on this basis would, by definition, be longer than necessary to comply with the Parsimony/Goldilocks Principle.

This claim is certainly debatable in the minds of reasonable jurists.

3. **There Is No Legitimate Procedural Bar To § 2255 Review, As Asserted**

The district court's procedural ruling was clearly erroneous, where it concluded, as follows:

37

> Although Kapordelis's current arguments in his § 2255 petition
> regarding his sentence are not identical to those raised in his
> direct appeal, he is nonetheless barred from raising them in
> this petition because he could have raised them on direct appeal.
> Therefore, this ground should be denied. (App. "E"; p. 15).

Tellingly, nowhere in the record did the district court acknowledge
(much less confront) Petitioner's linked claim of appellate-IAC, a
claim which, as explained supra, necessarily negates any alleged
procedural default if there exists (i) deficient performance by the
appellate attorney, and (ii) a reasonable likelihood of a different
result on appeal had the claim been enumerated.

In short, the district court failed to conduct the type of
analysis required by Eleventh Circuit precedent. See Cross v. United
States, 893 F.2d 1287 (11th Cir. 1990)(in order to determine whether
the failure to raise a claim on appeal resulted in prejudice, the
merits of the omitted claim must be reviewed). Had it conducted this
analysis, it would have concluded that no objectively reasonable
attorney would have failed to enumerate this "slam dunk" claim, where
the outcome on appeal would have been different because the evidence
in mitigation would have controlled (rather than the fact of legal,
gay sex).

Section 2255 review is also justified under 28 U.S.C. §
2254(d)(1), which permits habeas review of a decision, such as this
one, which involves a contrary and/or unreasonable application of
Supreme Court precedents.

A reasonable jurist would certainly debate the district court's
procedural ruling in this case.[18]

---

[18] Through his summary denial of a COA, Judge Tjoflat makes clear that he would
prefer to keep a back door open in order to punish legal gay sex through an
enhanced term of imprisonment, that back door being 18 U.S.C. § 3553(a).
Petitioner objects.

38

**Garland, Samuel & Loeb, P.C.**
TRIAL ATTORNEYS

3151 Maple Drive, N.E.
Atlanta, Georgia 30305
Telephone (404) 262-2225
Facsimile (404) 365-5041
www.gsllaw.com

Edward T. M. Garland
Donald F. Samuel
Robin N. Loeb
David E. Tuszynski
Anne H. Coolidge-Kaplan
John A. Garland
Amanda C. Palmer
Kristen W. Novay
Patrick R. Sullivan

May 24, 2013

Reuben A. Garland (1903-1982)

Greg Kapordelis
Reg. No. 63122-053
Federal Penitentiary
Marion, Illinois

Dear Greg:

I have reviewed the trial transcript, the principal appellate brief, the appellate reply brief, the Eleventh Circuit decision and some of the other documents in the voluminous record of both the trial court and the Eleventh Circuit and I have the following observations:

1. With regard to the issues that was raised in the Eleventh Circuit: One of the issues that was raised focused on the impropriety of permitting the government to introduce evidence pursuant to Rule 404(b) of the supposedly "similar transaction" evidence in Prague. We argued that the evidence was not, in fact, similar and that it was actually perfectly legal conduct and could serve no purpose other than to prejudice you (i.e., the jury would be irrationally inflamed by the evidence of legal gay sex). I did not see, when I drafted the appellate brief, another source of prejudice. For some reason, and I cannot determine why, during the court's jury instruction, the trial judge incorrectly instructed the jury that a minor may not consent to sexual activity (Tr. 2057). He also instructed the jury that a minor was defined as a person under the age of 18. I assume that the judge was intending to instruct the jury that a person under the age of 18 may not consent to having a visual image created of the person having sex. That is the law and that is the offense with which you were charged. (In fact, during the objections to the jury instructions – the charge conference – I objected to the instruction and the government argued that it was proper, because there was at least the suggestion at trial that the young men portrayed in the images had consented). It is not the law, however, that a person under the age of 18 may not consent to sex. Somehow, the court eliminated the words "depiction of sexual activity" and simply instructed the jury, incorrectly, that a person under the age of 18 may not consent to sexual activity. I believe that incorrectly instructing the jury would necessarily have further confused the jury as to what little (if any) relevance the Rule 404(b) evidence may have had. In other words, the court's instruction would have led the jury to believe that the conduct involved in the Rule 404(b) evidence was actually illegal. After all, the judge had instructed the jury to obey all his instructions, the judge instructed the jury that sex with a minor was a crime, notwithstanding consent; and a minor was defined as a person under the age of 18. Thus, given the undeniable fact that you had consensual sex with individuals *under the age of 18*, I do not see how the jury could have reached any conclusion, given the court's

**Garland, Samuel & Loeb, P.C.**
TRIAL ATTORNEYS

Greg Kapordelis Letter
May 24, 2013
Page 2

instructions, other than that your conduct in Prague was a crime. Yet, it was not and the court's instruction was erroneous. In this same connection, as I have stated there was abundant evidence that you did, in fact, have sex with young men in Prague who were under the age of 18 (but not under the age of consent). Certain exhibits (which were referenced in the Reply Brief – Exhibit 51-61, Tr. 770-784), were not listed in the initial opening brief. Though identified in the Reply Brief, it would have been better to have identified these exhibits in the opening brief. The prejudice in the trial was accentuated, moreover, by the government's closing argument that stated that you were free to have sex with anybody over the age of 18. Actually, you were free to have sex with anybody over the age of 16 (or whatever the age of consent is in a particular jurisdiction). There was no justification for the government's misrepresentation of the age of consent in the closing argument and this could have been brought to the appellate court's attention, as well, to demonstrate further prejudice to you.

2. On a separate point, during sentencing, the lower court's statements indicated that he was increasing your sentence beyond the prescribed guideline range based on conduct that was legal (again, the legal gay sex that was introduced pursuant to Rule 404(b)). He compared your travels to Prague (which the record demonstrated was for the purpose of engaging in legal gay sex) with cases of interstate travel to commit a sexual offense against a child – and then concluded that your conduct was more reprehensible, and thus a longer sentence was appropriate. This was an issue that was raised in the opening brief on appeal. However, the issue as raised in the appellate court did not direct the court to certain precedents, such as Lawrence v. Texas, cases that held that private, homosexual conduct between consenting adults may not be outlawed based on the Fifth and Fourteenth Amendments.

Sincerely,

Donald F. Samuel

DFS/hh